COPY

FILED

2013 OCT 22 PM 3: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

1  THE YELP CLASS-ACTION LAW FIRM
   Randy Rosenblatt (CA Bar #159738)
2  2419 East Harbor Blvd. #110
   Ventura, CA 93001
3  Telephone: (888)648-2444
   Email: *info@yelpclassaction.info*
4
   Attorneys for PLAINTIFFS
5

6

7

8              IN THE UNITED STATES DISTRICT COURT
9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  DR. ALLEN PANZER, AMY SAYERS,    )  CASE NUMBER  CV13-07805-DDP
    LILY JEUNG, and DARREN           )                            (JCG)
11  WALCHESKY, on behalf of themselves )
    and all others similarly situated  )
12                                     )  CLASS ACTION COMPLAINT FOR
                         Plaintiffs,   )  (1) VIOLATIONS OF THE FAIR LABOR
13                                     )      STANDARDS ACT;
    vs.                                )  (2) QUANTUM MERUIT
14                                     )  (3) UNJUST ENRICHMENT
    YELP, INC.                         )
15                                     )
                                       )  JURY TRIAL DEMANDED
16                     Defendants.     )
                                       )
17

FAXED

18
19    Plaintiffs ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, by
20  and through their undersigned counsel, allege upon personal knowledge as to themselves and upon
21  information and belief as to other matters, as follows:

22                                    I
23                     NATURE OF THE ACTION

24    1. Every day, millions of people use online reviews to help them make purchasing decisions,
25  whether for local tour-bus companies, law firms, pizza parlors, or sushi bars. Online reviews are
26  a popular and valuable resource for consumers to learn about local businesses and professionals.
27    2. Defendant Yelp owns and operates popular websites that feature information about local
28  businesses nationwide and around the world that include ratings, reviews, photos and more.

                                      1
                          CLASS-ACTION COMPLAINT

Yelp's websites, average 108 million visitors per month, and users have posted over 42 million reviews to them.

3. A vast majority of the ratings, reviews, and photos posted on Defendant Yelp's websites are created and supplied by a large and ever-growing stable of non-wage-paid writers. This lawsuit seeks to recover unpaid compensation for Plaintiffs and other similarly situated workers who have been employed by Defendant in the United States.

4. Defendant Yelp is an American online media company and weblog network, based in San Francisco, CA. Defendant has been listed in major news publications as being among the most financially successful weblogs in America. One article in particular attributes Defendant's huge profit margin to its low operating costs, which is in large part attributable to the non-wage-paid labor of its workers. Defendant, by virtue of its management and control over the nature of the wages and work of its employees, is an "employer" under applicable labor law.

5. Yelp earns its income by selling advertising on its site, the content of which is created free-of-wages by hordes of solicited posters, in violation of the Federal Labor Standard Act ("FLSA").

6. This is a class-action complaint under Section 216(b) of the Fair Labor Standards Act ("FLSA") based on Defendant's policies and practices of refusing to pay wages to its workers by designating them variously as "reviewers" or "Yelpers" or "independent contractors" or "interns" or "volunteers" or "contributors" even though they are performing vital work that inures to the benefit of Yelp's various business enterprises. Defendant could not exist, nor make its enormous returns, without its domination and control over non-wage writers. One of Defendant's co-founders stated: "The site wasn't set up to serve businesses, it was meant to serve the consumer. Without the community of reviewers, there is no Yelp."

7. Business journal commentators have compared said business practices to a 21st Century galley slave ship with pirates banging the drum to keep up the fast pace and to fill the pockets of

their stockholders with treasure. . . and with "overhead that would shame an antebellum plantation." "Yelp's business model profits off the unpaid work of reviewers".

8. Defendant's business model and slip-shod approach to its policies and practices have become suspect in both the public forum, as witnessed by the proliferation and popularity of such websites as *yelp-sucks.com*; and within the courtrooms.[1]

9. The practice of classifying employees as "reviewers" or "Yelpers" or "Elites" or "independent contractors" or "interns" or "volunteers" or "contributors" to avoid paying wages is prohibited by federal law, which requires employers to pay all workers who provide material benefit to their employer, at least the minimum wage. Defendant, by virtue of its management and control over the nature of the wages and work of its writers, is an "employer" under applicable labor law.

10. Additionally, Defendant, has been, and continues to be, unjustly enriched by the unpaid contributions provided by these plaintiffs and all those similarly situated. Unjust enrichment is based upon society's interest in preventing the injustice of a person's retaining a benefit for which no payment has been made to the provider.

11. The named plaintiffs, and persons similarly situated, are persons who each worked a substantial number of hours for Defendant over a number of years, and were not paid a single cent for their work. The work they performed -- writing, researching, editing, lodging reviews, upgrading prior reviews , and generally promoting the site -- is central to Defendant's business model as a publisher.

12. On information and belief, Defendant employs 10s of thousands other "reviewers" in

---

[1]Oregon Superior Court Judge Henry Kantor stated that Yelp's business model is "offensive" and "highly problematic." California Superior Court Judge Peter Doft, characterized Yelp's actions as "the modern day version of the Mafia going to stores and saying 'You wanna not be bothered ... you wanna not have incidents in your store? Pay us protection money'."

the same way, paying them nothing or underpaying them and utilizing their services to publish its content on the internet, an enterprise that generates significant amounts of revenue for Defendant.   Plaintiffs ask this Court to order Defendant to follow the law and compensate its workers pursuant to FSLA for the necessary services that they render to Defendant.

## II.
## JURISDICTION  AND VENUE

13.  This Court has original jurisdiction  over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, because the action involves a federal statute, the FLSA, 29 U.S.C  § 216

14.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2), because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district; 28 U.S.C. § 1391(c)(2), and (d).

## III
## PARTIES

15.  Plaintiff DR. ALLEN PANZER, is an individual domiciled in Houston TX. who has written approximately 70 reviews for Defendants since November 2007.  Dr. Panzer has 20 so called "friends" on Yelp, consisting of other Yelp writers, readers and employees .  Defendant unlawfully misclassified this plaintiff and the members of the Class as non-wage-paid employees, failed to pay them a minimum wage and overtime payments, and otherwise violated their legal rights as set forth herein.   Said party plaintiff has given consent in writing to become such a party and such consent shall be filed in the Court.

16.  Plaintiff AMY SAYERS is an individual domiciled in Portland, OR, who has written over 500 reviews for defendants since 2006; has been awarded the prestigious "First To Review" and "Review Of The Day" honors; and been designated an "Elite" reviewer by Defendants[2].  In order to maintain her "Elite" status,  Ms. Sayers was often directed to write more reviews if in

---

[2]Yelp defines "Elite" status as "a designation awarded writers who supply superior intellectual, social, and/or economic status and are deemed the best or most skilled writers"

1   Defendant's opinion her production seemed to slack off.  Substantially all of her labors for Yelp are

2   within this judicial district.   Ms. Sayers was fired from her position with no warning, a flimsy

3   explanation, and no opportunity for recourse or appeal rights.  Her licence to write reviews was

4   revoked; the awards she had attained were taken away; and her reviews were removed from the

5   website, and she has been refused access to her own writings.  Defendant unlawfully misclassified

6   this plaintiff and the members of the Class as non-wage-paid employees, failed to pay them a

7   minimum wage and overtime payments, and otherwise violated their legal rights as set forth herein.

8   Said party plaintiff has given consent in writing to become such a party and such consent shall be

9   filed in the Court.

10

11       17.  Plaintiff, LILY JEUNG is an individual domiciled in Los Angeles, CA, who has written

12   approximately 1,100 reviews for Defendants; until recently had 5,000 "followers" (which is the

13   maximum amount possible), with a "waiting list" of at least 100 individuals in line to become her

14   "followers"; been awarded the prestigious "First To Review" and "Review Of The Day" honors;

15   and for the previous 5 years has been designated by Yelp as an "Elite" reviewer.  Substantially all

16   of her labors for Yelp are within this judicial district.   In order to maintain her "Elite" status,  Ms.

17   Jeung was often directed to write more reviews if in Yelp's opinion her production seemed to slack

18   off.  Ms. Jeung  was fired from her position with no warning, a flimsy explanation, and no

19   opportunity for recourse or appeal rights.  Her licence to write reviews was revoked; the awards she

20   had attained were taken away; and her reviews were removed from the website, and she has been

21   refused access to her own writings.  Defendant unlawfully misclassified this plaintiff and the

22   members of the Class as non-wage-paid employees,  failed to pay them a minimum wage and

23   overtime payments, and otherwise violated their legal rights as set forth herein.  Said party plaintiff

24   has given consent in writing to become such a party and such consent shall be filed in the Court.

25

26       18.  Plaintiff, DARREN WALCHESKY is an individual domiciled in Pittsburgh PA, who has

27   written over 1,200 reviews, as well as 238 follow-up and updated reviews for Defendants.   His

28

writings have garnered 13,536 "Useful" votes, 10,469 "Funny" votes, and 11,854 "Cool" votes from Defendant's audience of writers and readers.  Mr. Walchesky has received 611 "First to Review" awards from Yelp; has taken and submitted 2,122 photographs which have been published at Defendant's discretion; and was often directed to write more reviews if in Yelp's opinion his production seemed to slack off.   Additionally, Mr. Walchesky hosted at least one social and instructional event for fellow Yelp writers at the bequest of Defendants.  Defendant unlawfully misclassified this plaintiff and the members of the Class as non-wage-paid employees,  failed to pay them a minimum wage and overtime payments, and otherwise violated their legal rights as set forth herein.   Said party plaintiff has given consent in writing to become such a party and such consent shall be filed in the Court.

19.  The defendant, YELP, INC., is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware and with its principal place of business in San Francisco, CA. Yelp  operates the website *yelp.com*, as well as various others.

20.  Defendant has the power to set wages and wage policies for its employees, which in conjunction with its detailed policies and procedures and terms and conditions, Defendant controls the behavior of its workers and the placement and content of the their work product. Defendant is a covered employer within the meaning of the FLSA.   At all relevant times, Defendant is legally responsible for the violations of the FLSA committed by Defendant and alleged in this Complaint.

**IV.**
**CLASS ACTION ALLEGATIONS**

21. Plaintiffs bring this action under Fed. Rules Of Civ. Pro. 23(a) and (b) as a class action on behalf of themselves and all others similarly situated for the purpose of asserting the claims alleged in this Complaint on a common basis.

22.  Plaintiffs in all claims, pursuant to the FLSA, 29 U.S.C. § 216,  on behalf of themselves

and all similarly situated persons, were employees of Defendant, and were not paid wages for their work published on Defendant's website; each performed duties relating to the creation and promotion of content on behalf of Defendant, including but not limited to writing, researching, editing, lodging reviews, upgrading prior reviews , and generally promoting the site, during the period between four years prior to the filing of this Complaint and until the date of final adjudication of this action (the "FLSA Class").

23.   Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

24.   Some Plaintiffs wrote reviews for Defendant regularly, while others wrote intermittently.

25.   Plaintiffs were an indispensable and integral part of the success of the Defendant's business.  Defendant's business model is dependent on the plaintiff writers.

26.   The totality of the circumstances surrounding Plaintiffs' employment relationship with Defendant indicates economic and other dependence.

27.   Although Plaintiffs do not know the exact size of the Class or the identities of all members of the Class, upon information and belief that information can readily be obtained during discovery. Plaintiffs believe that the Class includes thousands of persons who are widely geographically disbursed.  Thus, the proposed Class is so numerous that joinder of all members is impracticable.

28.   The claims of all members of the Class involve common questions of law and fact.

29.   Plaintiffs' claims are typical of the claims of all other members of the Class, and Plaintiffs' interests do not conflict with the interests of any other member of the Class, in that Plaintiffs and the other members of the Class were subjected to the same unlawful conduct.

30.   Plaintiffs are committed to the vigorous prosecution of this action and have retained competent legal counsel experienced and knowledgeable in labor law.

31.   Plaintiffs are adequate representatives of the Class and, together with its attorneys, are able to and will fairly and adequately protect the interests of the Class and its members.

32.  A class action is superior to other available methods for the fair, just, and efficient adjudication of the claims asserted herein.  Joinder of all members of the Class is impracticable and, for financial and other reasons, it would be impractical for individual members of the Class to pursue separate claims.

33.  Moreover, the prosecution of separate actions by individual members of the Class would create the risk of varying and inconsistent adjudications, and would unduly burden the courts.

**V.**
**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

34.  While the allegations in this *Complaint and Jury Demand* are generally written in the past tense, they apply equally to Class Members who are currently employed by Defendants.

**A.  Defendant Exploits a Vulnerable and Disposable Class of Workers**

35.  Defendant's business model is predicated entirely on the exploitation of Plaintiffs' work product in order for the company and its owners to earn approximately $220 million annually. Its success is dependant upon the efforts of hordes of non-wage-paid reviewers and its ability to use those reviews as ready-made advertising-content to advertise businesses on their websites.

36.  Defendant's enormous growth and preeminence as a publisher are directly attributable to its low operating costs, made possible by not paying wages to an entire class of workers and thereby also sidestepping payment of taxes, and other societal contributions.

37.  By shirking its responsibilities to pay its workers, Defendant is in essence thumbing its nose both at their workers and the taxing authorities of all states and the U.S. Government.

38.  Yelp has devised a system of cult-like rewards and disciplines to motivate its non-wage-paid writers to labor without wages or expense reimbursement, in violation of equitable principles and the FSLA, by offering such rewards as trinkets, badges, titles, praise, social promotion, free liquor, free food, and free promotional Yelp attire, such as red panties with "Make Me Yelp!"

stamped across its bottom.[3]  Awards and public recognition are regularly offered for such activities as being the first to review a new business; frequently checking in with specific businesses; and for writing a certain number of reviews within a given time-frame.   These motivational awards are offered by Defendant to its writers instead of just compensation in the form of wages.  States one long-time Yelper, "It's kind of like a cult, except instead of Kool-Aid we drink alcohol,"

39.  Yelp's parties have become regular and highly-anticipated events for its "Elite Squad", comprised of  selected invitees based on the quality and quantity of their reviews, and help Yelp continue to push workers to compete for what have become coveted honors.

40.   Other motivations besides bestowing prolific reviewers with the title "Elite"[4] is the dubbing of individuals with such titles as "Duke" or "Duchess"; then "Baron" or "Baroness" (the ones with the most Dukedoms in their neighborhood); and finally crowning their active participants "King" or "Queen", the person with the most Dukedoms in a given city.   These titles are used to generate and maintain interest and productivity of its writers in lieu of monetary compensation, as required by the FLSA.

41. Additional motivational awards offered by Yelp to its workers, including "Review of the Day";  "Review of the Week", "Review of the Month", "Look Who's Mouthing Off", and "Reviews We Like", are routinely used instead of payment of just compensation in the form of wages. These awards are treated as valuable commodities within the Yelp community, and by utilizing an award-and-punishment form of barter, Yelp is trying to avoid its responsibility to pay its workers a fair

---

[3]"You can have fans. You can get the glory of personal thanks from chefs you've deified, or the smug satisfaction of hate mail from those you've savaged. You can hobnob with sous-chefs at food events. If your soul is for sale, you can cadge free drinks or meals.  As a bonus, you might even get a sex life — and if so inclined, you can discuss it in detail, online, with fellow foodies." Journalist's summation after researching Yelp's success in motivating non-wage-paid writers to work in violation of their rights under the FLSA.

[4]On its website, Defendant describes its "Elite Squad" as a way of "recognizing and rewarding Yelpers who are active evangelists and role models, both on and off the site".

1   wage, and to contribute its share of employment taxes.

2   B. **"Right to Control" Test**

3       42.   One test used by Courts to determine an entity's relationship to its workers is the

4   employer's right to control.   The critical question in determining direction and control under this

5   test is not the *actual* exercise of control or the *degree* of control by the employer, but whether the

6   *right of* control exists.

7

8       43.   Yelp urges its non-wage-paid writers to increase the volume of their production with such

9   challenges as "100 Reviews in 100 Days", their pay being liquor, food, badges, trinkets, and titles.

10  Additionally, Yelp promoters instruct the non-paid writers where to post their work product.   When

11  writers fail to follow Yelp's requests, they are corrected and counseled to move their work to a

12  directed location.   Yelp writers are also directed by Defendant to write more reviews at a faster pace

13  if in Defendant's opinion its non-wage-paid writer production is declining.

14      44.   While these and thousands of other similarly-situated plaintiffs worked for liquor, food,

15  badges, trinkets, and titles, certain other writers within the company have been paid in wages; these

16  include but are not limited to the 200,000 reviewers that Defendant admitted to in its SEC filing;

17  the paid-with-wages "scouts" who open up new geographic areas for the company; "Community

18  Managers" in each of the cities in which Yelp operates; and traditionally-salaried employees of

19  Yelp, including the CEO, who has written more than 1,400 reviews on the site.   This action seeks

20  to have all writers for Defendant be paid in wages pursuant to the FLSA.

21

22      45.   Another key factor in determining an employer's right to control is its ability to fire its

23  workers.   Defendant has, and exercises, the right to fire any worker at any time, with or without

24  cause, with or without warning, with or without explanation or offering any recourse or formal

25  appeal rights.

26      46.   At least two named Plaintiffs, and numerous other similarly situated persons, *were*

27  actually fired by Defendant; their badges and licenses were revoked; their status and reputation

28

sanctimoniously stripped away; and their extensive work product deleted from the system with no recourse or ability to recover it.

47.  One plaintiff stated: "My situation is a little different. I left a negative review on Yelp regarding one of their advertisers. Not only was my review removed, but I also received an e-mail cancelling my Yelp account and stating that I could no longer write reviews or get access to any that I had written.  I was fired by Yelp for supposedly breaking one of their rules, which I didn't".

48.  By imposing strict guidelines and policies on its reviewers, Defendant exercises full control over the quality, tone, content, quantity, placement, and it's all-important star-rating system

49.  These Plaintiffs, and other similarly situated persons, *did* actually work under the close scrutiny and prodding of Defendant and had to closely adhere to Defendant's contracts, content guidelines, terms of service, and other policy statements.

50.  Additionally, writers and their work-product are used as pawns in Defendant's transparent strategy of utilizing the reviews as ammunition to punish some businesses and reward others. Defendant controls the content of its websites by unilaterally determining what kind of reviews it will use, and what kind it won't

51.  Defendant controls its writers in the form of directives: An "elite" reviewer of long duration revealed that Defendant directly and through its "Community Managers" controls the writers with ethical standards, often by deleting "non-conforming" work; by chastising its writers for failing to follow Yelp rules; and dispensing so-called "guidelines" in form of directives.

52.  In directives to his non-wage-paid workers, Yelp CEO, Jeremy Stoppelman, gives direct orders to non-wage-paid employees and has threatened that there would be dire consequences if they failed to obey him stating: "I make the decisions and I stand behind them". CEO Stoppelman further refers to "the measuring stick" and warns "there will be serious penalties to those that ignore us. The measuring stick is do you have enough independence to be able to criticize the business? If the person is a friend or you can't imagine a scenario where you could give them anything less than a

5 star review you're likely biased and shouldn't review the business. I would definitely not review any of your business networking contacts made through Ladies who Launch or the eWomenNetwork."

53. Defendant cajoles its troops: "By accepting this invitation, you'll be one of the voices and faces of Yelp Elite -- in essence our ambassadors both on and offline - so all we ask is that you commit to keep "Yelping" about your favorite restaurants and clubs, your doctor, your mechanic, your hair salon, or really anything that's local and would help others to know about! We want you to keep telling your friends about Yelp and encourage them to invite their friends as well (the more people Yelping, the more useful and fun the site becomes). We also ask that you contribute positively to the site and do your part to set an example of what a stellar Yelper can and should be."

54. Plaintiffs report they must write glowing reviews of the venues that sponsor company events, where they are often offered free food, liquor, and use of the premises, under threat of losing their "elite" status[5].

55. Defendant controls its reviews to pander to its advertisers. For instance, Defendant informed one of its writers that it was removing her reviews because it was based on her personal experience. It then told another writer that it was removing his reviews because they were NOT based on his personal experience. This odd conduct by Defendant is used to placate advertisers who might get upset by negative reviews, and then threaten to cancel their advertising.

56. One writer said: "I loved Yelp until I got an email from them saying they have taken off my photos due to the pictures being my 'personal experience' and that the reason behind taking off

---

[5]Yelp, at all times relevant had the right to control its non-wage-paid employees. At a business meeting of so called Yelp "Elites" held at a restaurant, one of the non-wage-paid employees because so intoxicated with the free liquor supplied by Yelp or its sponsor that she became unconscious. Rather than call for medical assistance for this life threatening condition, Yelp wage-paid employees controlled the intoxicated woman at the site, denying her medical rescue, and unsuccessfully searched for her identity with evidence of her age and her address. While the woman remained unconscious wage-paid employees of Yelp stayed with her until she finally became conscious again to mumble her address.

my photos is because it does not 'portray the business as a whole.' Well excuse me for showing other victims where their $100 a night stay is worth. I'm sorry I was honest. Would it be better if I lied?"

57. Another reviewer admits that her two-star review (in which she says the restaurant "sucks") wasn't really because she hated the restaurant - in fact, she thinks the proprietors have "a great thing going" – but because in order to keep her "Elite" status, she must write reviews with every level of Yelp ratings, including one-and two-star ratings. This directly conflicts with Yelp's assurance to the SEC that it doesn't tell its reviewers how to rate businesses, as well as lends credence to the countless business owners who insist that Yelp manipulates the review system.

58. Defendant has admitted that it controls the content and placement of its reviews for the benefit of its business model:

> "If we fail to filter or remove a significant amount of content that is biased, unreliable, or otherwise unhelpful, or if we mistakenly filter or remove a significant amount of valuable content, our reputation and brand may be harmed, users may stop using our products and our business and results of operations could be adversely affected.
>
> Our success depends on the quality of the reviews, photos and other content that we show on our platform, including whether they are helpful, up-to-date, unbiased, relevant, unique and reliable. If users do not value the content on our platform, they may stop or reduce the use of our products, and traffic to our website and on our mobile app will decline. If our user traffic declines, our advertisers may stop or reduce the amount of advertising on our platform.
>
> As a result, our business could be negatively affected if we fail to obtain high quality content from our contributors, or if the content we display is

perceived to be unhelpful, out-of-date, biased, irrelevant, not unique or unreliable.

We must therefore ensure that our products and features are attractive to users, and encourage them to contribute. In addition, users who contribute content to our platform may provide content to our competitors or subsequently remove their content from our platform. If they do so, the value of our content may decline relative to other available products and services, and our business may be harmed."

## C. "Relative Nature Of the Business" Test

59.  A secondary test used by Courts to determine an entity's relationship to its workers is the **"relative nature of the business"** test, the components of which include determining whether the principal retains pervasive control over the operation as a whole, and whether the worker's duties are an integral part of the operation.

60.  Defendant retains pervasive control over the operation and content of its website in performing vital work that inures to the benefit of Yelp's various business enterprises.  Defendant admits that it could not exist, nor make its enormous returns, without its domination and control over unpaid writers.

61.  Plaintiffs duties are an integral part of Defendants' operation.   One of Yelp's co-founders stated: "The site wasn't set up to serve businesses, it was meant to serve the consumer. Without the community of reviewers, there is no Yelp."

62. Defendant disseminated a public notice: "We love interns at Yelp! And since we are such a small, agile team, we can take on interns around the clock. If you are looking to gain experience at a cool start-up and do real work, then this is the place. Join us as an intern and have a real impact on our mobile apps, yelp.com or our services for business owners."

63.  Defendant has paid some writers wages to write reviews for its websites, while a vast majority of its reviewers are paid with liquor, food, badges, trinkets, and titles.  Not only must the wage-paid and non-wage-paid writers follow the exact same rules dictated by Defendant, but when looking at the profiles of the writers on Yelp's website, there is no distinction made between them, other than a rare "Scout" or "Ambassador" badge for a wage-paid writer.  This discretionary method of paying some employees wages, but not others, is in violation of the FLSA.

64.  One writer, who had been an advocate, promoter, educator, and regular contributor with numerous followers, stated that "I was Elite long before Pittsburgh had a community manager and Elite Squad parties.  Back in 2007, Yelp actually paid people wages in Pittsburgh to write reviews to get the ball rolling.  Silly me, I was doing it for free (i.e. non-FLSA-required wages)."

## VI.
## IMPACT OF VIOLATIONS

65.  The misclassification of employees as something other than employees, whether they go by such monikers as volunteers, independent contractors, interns, contributors, free-lance writers, reviewers, elites or Yelpers, presents a serious problem for affected employees, employers, and to the entire economy. Misclassified employees are often denied access to critical benefits and protections – such as, minimum wage, overtime, health insurance, retirement benefits and unemployment insurance – to which they are entitled. Employee misclassification also generates substantial losses to the Treasury and the Social Security and Medicare funds, as well as to state unemployment insurance and workers compensation funds.

66.  The Department of Labor's *Misclassification Initiative*, launched under the auspices of Vice President Biden's Middle Class Task Force, is making great strides in combating this pervasive issue and to restoring these rights to those denied them. In September 2011, Secretary of Labor Hilda L. Solis announced a major step forward with the signing of a Memorandum of Understanding (MOU) between the Department and the Internal Revenue Service (IRS). Under this agreement, the

agencies will work together and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws.

67. This Court must force Defendant, and other similarly-situated employers, to comply with Federal labor laws; this would send a clear message that private companies cannot rely on non-wage-paid laborers, to perform work that is the core of its business, and that they have a responsibility to uphold the spirit of the law. Further, Defendant's use of non-wage-paid employees gives it an unfair business advantage over its competitors.

## VII.
### FIRST CAUSE OF ACTION
### ON BEHALF OF NAMED PLAINTIFFS,
### AND ALL OTHER PERSONS SIMILARLY SITUATED:
### VIOLATIONS OF THE *FAIR LABOR STANDARDS ACT*

68. Plaintiffs incorporate by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

69. Defendant failed to pay these plaintiffs or any similarly-situated worker any compensation for the work and labor they performed for Defendant as employees of Defendant.

70. These Plaintiffs and all other similarly-situated workers are owed unpaid wages from Defendants pursuant to 29 U.S.C. §§ 206, 207, and any other applicable statute or rule, in an amount which will be determined upon a review of Defendant's records and/or at the trial on this action.

71. The number of persons similarly situated to the individual plaintiffs, and the names of such persons, is unknown, but such persons, upon information and belief, number in the tens-of-thousands, and such persons, who will be identified once discovery is had in this case upon the review of Defendant's records and upon such identification will be offered to "opt-in" to join with this action, are owed unpaid minimum wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records

1  and/or at the trial of this action.

2  72. Defendants' violations of the FLSA were willful.

3  73. As a result of the foregoing, the individual plaintiffs seek judgment against the

4  defendants on their own behalf and on behalf of those similarly situated who file written

5  consents to joinder in this action for all unpaid minimum wages owed by the defendants to the

6  plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. §§ 206, 207, together

7  with an award of an additional equal amount as liquidated damages, and costs, interest, and

8  attorney's fees, as provided for under 29 U.S.C. § 216(b).

9

10

11  **VIII.**
   **SECOND CAUSE OF ACTION**
12  **ON BEHALF OF NAMED PLAINTIFFS,**
   **AND ALL OTHER PERSONS SIMILARLY SITUATED**
13  **PURSUANT TO *QUANTUM MERUIT***

14

15  74.  Plaintiffs incorporate by reference the allegations of each and every paragraph

16  numbers 1-67 inclusive as though fully set forth herein.

17  75.  Plaintiffs wrote, researched,  edited, lodged reviews, upgraded prior reviews , and

18  generally promoted Defendant's website based upon Yelp's inducement of trinkets, social status,

19  liquor, food and other non-wage compensation.

20

21  76.  Defendant utilized Plaintiffs' services to publish their content on the internet, an

22  enterprise that generates two-hundred-and-twenty million dollars ($220,000,000) per year.

23  77.  Defendant has failed to pay Plaintiffs just compensation of wages, benefits and

24  reimbursement for the reviews they created.

25  78. As a result of the Defendant's failure and refusal to pay said commissions, Defendant has

26  been unjustly enriched.

27

28  79.  As a direct and proximate result of Defendant's failure or refusal to pay said

commissions, Plaintiffs have sustained damages, to be proven.

80. Equity and justice require Defendant to pay the Plaintiffs just compensation of wages, benefits and reimbursement for the reviews they created.

81. Plaintiffs are without a remedy absent this Court's intervention.

## IX.
## THIRD CAUSE OF ACTION
## ON BEHALF OF NAMED PLAINTIFFS,
## AND ALL OTHER PERSONS SIMILARLY SITUATED
## PURSUANT TO *UNJUST ENRICHMENT*

82. Plaintiffs incorporate by reference the allegations of each and every paragraph numbers 1-67 inclusive as though fully set forth herein.

83. Defendant, has been, and continues to be, unjustly enriched by the non-wage-paid labors provided by these plaintiffs and all those similarly situated. Unjust enrichment is based upon society's interest in preventing the injustice of a person's retaining a benefit for which no lawful payment has been made to the provider.

84. By refusing to pay Plaintiffs wages for hours worked, Defendant as unjustly enriched at the expense of and to the detriment of all Plaintiffs.

85. Defendant's retention of any benefit collected directly and indirectly violates principles of justice, equity, and good conscience when they refuse to pay Plaintiffs' wages. As a result, Defendant has been unjustly enriched.

86. Plaintiffs are entitled to recover their fair compensation, and Defendant should be required to disgorge to Plaintiffs the benefit they have unjustly obtained.

## X.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all other similarly situated persons, seek the following relief: Unpaid wages; reimbursement of expenditures; and liquidated and statutory damages as permitted by law;

Notice to be issued by the Court to all similarly situated persons;

That other similarly situated, past or present writers and reviewers of Defendant be given the opportunity to join in this lawsuit as party-plaintiffs by filing written consents under the FLSA;

Pre-judgment and post-judgment interest;

Reasonable attorneys fees and costs of the action; and

Such other relief as this Court shall deems proper.

DATED: October 20, 2013                    **THE YELP CLASS-ACTION LAW FIRM**


By: _____
Randy Rosenblatt, Esq.
Attorneys for DR. ALLEN PANZER *et al,*
and the proposed class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Dean D. Pregerson _____ and the assigned Magistrate Judge is _____ Jay C. Gandhi _____.

The case number on all documents filed with the Court should read as follows:

## 2:13-CV-7805-DDP (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

October 22, 2013
_____
Date

By  MDAVIS
_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ **Western Division**
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ **Southern Division**
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ **Eastern Division**
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Dr. Allen Panzer, Amy Sayers, Lily Jeung, and Darren Walchesky, on behalf of themselves and all others similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Yelp, Inc.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)
The Yelp Class Action Lawfirm
Randy Rosenblatt, Esq.
2419 East Harbor Blvd. #110
Ventura, CA 93001      (888)648-2444

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes  ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Action for wages under Fair Standards Labor Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| | | | | | |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | | | ☐ 530 General | |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☒ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: **CV13-07805**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | | |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | | | |
|---|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | | ☐ |

**C.1.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
**SOUTHERN DIVISION.**
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
**EASTERN DIVISION.**
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
**WESTERN DIVISION.**
Enter "Western" in response to Question D below.

Enter the initial division determined by Question A, B, or C above: ➡

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

---

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** Randy Rosenblatt, Esq.          **DATE:** October 15, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

DR. ALLEN PANZER, AMY SAYERS, LILY JEUNG and DARREN WALCHESKY, on behalf of themselves and all others similarly situated )
)
)
)
)

*Plaintiff(s)*

v.

YELP, INC.

)
)
)
)
)
)
)

*Defendant(s)*

Civil Action No. **CV13-07805** -DDP
(JCGₓ)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  YELP, INC.
140 NEW MONTGOMERY ST 9TH FL
SAN FRANCISCO CA 94105

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  THE YELP CLASS-ACTION LAW FIRM
Randy Rosenblatt, Esq.
2419 East Harbor Blvd. #110
Ventura, CA 93001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  OCT 22 2013 _____

_____
Signature of Clerk or Deputy Clerk