JAMES C. POTEPAN (SBN 107370)
Email:  james.potepan@leclairryan.com
ANGELI C. ARAGON (SBN 176142)
Email:  angeli.aragon@leclairryan.com
LECLAIRRYAN. LLP
725 S. Figueroa Street, Suite 350
Los Angeles, CA  90017
Telephone:  (213) 488-0503
Facsimile:  (213) 624-3755

AARON SCHUR (SBN 229566)
Email:  aschur@yelp.com
YELP INC.
140 New Montgomery Street
San Francisco, CA 94105
Telephone:  (415) 908-3801
Facsimile:  (415) 615-0809
Attorneys for Defendant
YELP INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. ALLEN PANZER, AMY SAYERS, LILY JEUNG, and DARREN WALCHESKY, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>        v.<br><br>YELP INC.,<br><br>                        Defendant. | CASE NO.  CV13-07805-DDP-JCG<br><br>Assigned Judge: Hon. Dean D. Pregerson<br><br>**DEFENDANT YELP INC.'S MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (F.R.C.P. 12(B)(6)), AND TO STRIKE CLASS ACTION ALLEGATIONS (F.R.C.P. 12(F)); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[FILED CONCURRENTLY WITH: DECLARATION OF ANGELI ARAGON; REQUEST FOR JUDICIAL NOTICE]*<br><br>Date:          January  27, 2014<br>Time:          10:00 a.m.<br>Courtroom:   3<br><br>Complaint Filed:  10/22/13 |

11809881

- 1 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. PLAINTIFFS' ALLEGATIONS IN THEIR COMPLAINT .......................... 2

    A. Yelp .......................................................................................................... 2

    B. Yelp's Terms of Service and Other Written Policies ........................... 2

    C. Yelp Elite Squad ................................................................................... 4

    D. Plaintiffs ................................................................................................ 5

    E. Plaintiffs' Purported Class ................................................................... 5

    F. Materials Incorporated By Reference and Necessarily Relied Upon by Plaintiffs in Their Complaint ................................................. 6

III. THE COURT SHOULD DISMISS PLAINTIFFS' FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA ................................................. 7

    A. Rule 12(b)(6) Standard ........................................................................ 7

    B. Plaintiffs Fail To State a Claim Under the FLSA Because They Fail To Plausibly Establish That They Are Employees of Yelp ......... 8

        1. Yelp Has No Power to Hire or Fire ........................................... 9

        2. Yelp Lacks Supervision and Control of Plaintiffs' Work Schedules or Conditions .......................................................... 11

        3. Plaintiffs' Allegations Are Insufficient to Establish That Yelp Determined Rate and Methods of Payment ..................... 15

        4. Plaintiffs' Allegations Are Insufficient to Establish That Yelp Maintained Employment Records ................................... 15

IV. THE COURT SHOULD STRIKE PURPORTED CLASS ACTION ALLEGATIONS UNDER RULE 12(F) ....................................................... 16

    A. Rule 12(f) Standard ............................................................................ 16

    B. Plaintiffs Fail to Define any Ascertainable Class .............................. 16

V. CONCLUSION .................................................................................................. 18

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678 .................................................. 8

*Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990 ........................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) .............................................. 7

*Bonnette v. California Health & Welfare Agency*,
   704 F.2d 1465, 1469 (9th Cir. 1983).................................................................. 8

*Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009)........................................... 8

*Brazil v. Dell, Inc.*,
   585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) .............................................. 16

*Brouwer v. Metropolitan Dade County*,
   139 F.3d 817, 818 (11th Cir. 1998)................................................................ 16

*Campbell v. PricewaterhouseCoopers, LLP,*
   253 F.R.D. 586, 593 (E.D. Cal. 2008) ........................................................... 17

*Donovan v. Sureway Cleaners*,
   656 F.2d 1368, 1370 (9th Cir. 1981)................................................................ 9

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524, 1527 (9th Cir. 1993)........................................................ 16, 18

*Goldberg v. Whitaker House Cooperative, Inc.*,
   366 U.S. 28, 33 (1961) ...................................................................................... 8

*In re Gilead Sciences Securities Litig.*,
   536 F.3d 1049, 1055 (9th Cir. 2008)................................................................ 7

*Lambert v. Ackerley,*
   180 F.3d 997, 1001-02, 1012 (9th Cir. 1999) ................................................. 8

*Lerwill v. Inflight Motion Pictures, Inc.,*
   582 F.2d 507, 512 (9th Cir. 1978)................................................................ 17

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
   416 F.3d 940, 946 (9th Cir. 2005 ................................................................... 2

*Lozano v. AT&T Wireless Servs., Inc.,*
   504 F.3d 718 (9th Cir. 2007)........................................................................ 16

11809881   - ii -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS
ACTION ALLEGATIONS (RULE 12(F))

11884974-2

*Lyons v. Bank of Am.*,
　2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) ..................................... 16

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) .................................................. 7

*Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) ................................ 8

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ................................................. 7

*O'Connor v. Boeing North American, Inc.*,
　184 F.R.D. 311, 319 (C.D. Cal. 1998) ............................................................ 17

*Real v. Driscoll Strawberry Assocs., Inc.*,
　603 F.2d 748, 754 (9th Cir. 1979)..................................................................... 9

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ................................. 8

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ........................ 16

*Schwartz v. Upper Deck Co.*,
　183 F.R.D. 672, 679-680 (S.D. Cal. 1999) ..................................................... 16

*Stearns v. Select Comfort Retail Corp.*,
　2009 WL 4723366, at *15-16 (N.D. Cal. Dec. 4, 2009)................................. 16

*Student Loan Marketing Ass'n v. Hanes*,
　181 F.R.D. 629, 634 (S.D. Cal. 1998)............................................................... 8

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012)...................... 10

*U.S. ex rel Chunie v. Ringrose*, 788 F.2d 638, 643 (9th Cir. 1986) .......................... 7

*United States v. Corinthian Colleges*,
　655 F.3d 984, 999 (9th Cir. 2011).................................................................... 7

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ...................................... 7

*Whittlestone, Inc. v. Handi-Craft Co.*,
　618 F.3d 970, 973-974 (9th Cir. 2010) ........................................................... 16

*Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) ........................ 10, 11, 15

**Statutes**

29 U.S.C. § 203(d).................................................................................................. 8
29 U.S.C. §203(e).................................................................................................. 8
29 U.S.C. §216 ...................................................................................................... 5
Rule 12(b)(6) .......................................................................................... 1, 7, 16, 18
Rule 12(f)................................................................................................. 1, 16, 18

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

With the rise of the Internet as a tool for expression and commerce, websites have proliferated to give hundreds of millions of people ways to express themselves in unprecedented ways. Online users can spread news on Twitter, post job listings on Craigslist, review books on Amazon, or share consumer experiences on Yelp— reaching a far more vast audience for their content than ever before. Plaintiffs here threaten to upend these innovative services with the outrageous claim that anyone who posts something on the Internet becomes an employee of the online forum in which it is posted, and is therefore entitled to compensation under the Fair Labor Standards Act. These are meritless allegations, but if legitimized by this Court would endanger the public's access to free online forums.

Defendant Yelp Inc. ("Yelp") is a leading online forum that allows members of the public, free of charge, to read and write reviews about their experiences with local businesses, government services, and other local establishments. The named Plaintiffs (Dr. Allen Panzer, Amy Sayers, Lily Jeung and Darren Walchesky (collectively "Plaintiffs")) are people who have used Yelp's free websites to post content, and therefore now claim that they are employees of Yelp.

Plaintiffs, however, have never been employees of Yelp, and the Complaint's meandering allegations fail to establish the existence of any employer/employee relationship between Plaintiffs and Yelp under the Fair Labor Standards Act ("FLSA"). Accordingly, pursuant to Rule 12(b)(6), this Court should dismiss Plaintiffs' First Cause of Action claiming a violation of the FLSA.

In addition, pursuant to Rule 12(f), Plaintiffs' purported class action allegations should be stricken because Plaintiffs identify no ascertainable class in their Complaint.

Finally, the Court should not give Plaintiffs the opportunity to amend their Complaint, as it is clear that they cannot save their faulty pleading of an

11809881                                      - 1 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1  employer/employee relationship, or of an ascertainable class, through amendment.

2  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.

3  2005) (A court need not permit amendment if "it is clear that the complaint could

4  not be saved by an amendment.")

5  **II.    PLAINTIFFS' ALLEGATIONS IN THEIR COMPLAINT**

6       **A.    Yelp**

7       Yelp publishes popular websites (such as www.yelp.com) that allow

8  consumers—like Plaintiffs—to freely read and write reviews about local

9  businesses, government services, and other local establishments online.  Complaint,

10  par. 1 (calling online reviews a "popular and valuable resource for consumers").  As

11  Plaintiffs admit, the reviews on Yelp's website are contributed by members of the

12  public (like themselves), who rate local businesses on a scale of one to five stars.

13  Complaint, pars. 2, 3.  As the Complaint notes, Yelp averages over 100 million

14  unique visitors per month to its websites, and its users have contributed over 40

15  million reviews.  Complaint, par. 2.

16       **B.    Yelp's Terms of Service and Other Written Policies**

17       Like other websites, Yelp maintains Terms of Service, Content Guidelines,

18  Frequently Asked Questions and other policy statements that set limits on how

19  individuals may use Yelp's services.  Complaint, pars. 48, 49.  *See* Yelp's

20  Frequently Asked Questions, Declaration of Angeli Aragon ("Aragon Decl."), par.

21  3, Ex. A; Terms of Service, Aragon Decl., par. 4, Ex. B; Content Guidelines,

22  Aragon Decl., par. 5, Ex. C; Elite Squad Terms of Membership ("Elite Terms"),

23  Aragon Decl., par. 6, Ex. D.  Yelp's Terms of Service and Content Guidelines

24  (together "Terms"), for example, govern use of Yelp's services.  Complaint, par.

25  49.  *See* Aragon Decl., Terms of Service, Aragon Decl., par. 4, Ex. B; Content

26  Guidelines, Aragon Decl., par. 5, Ex. C.

27       The Terms, for example, make clear that a Yelp user retains ownership of the

28  content that he or she submits to Yelp, and that certain conduct—such as posting

11809881                                    - 2 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS
ACTION ALLEGATIONS (RULE 12(F))

11884974-2

reviews that are paid for—is prohibited. Terms of Service, Aragon Decl., par. 4, Ex. B, Sections 5(A), 5(C), 12(A);[1] Content Guidelines, Aragon Decl., par. 5, Ex. C, "General Guidelines" and "Review Guidelines." *See also* Frequently Asked Questions, Aragon Decl., par. 3, Ex. A, "User Reviews." The Terms of Service state that Yelp may terminate user accounts at any time, and allow users to

---

[1]  5. CONTENT
A. Responsibility for Your Content
You alone are responsible for Your Content, and once published, it cannot always be withdrawn. You assume all risks associated with Your Content, including anyone's reliance on its quality, accuracy, or reliability, or any disclosure by you of information in Your Content that makes you personally identifiable. You represent that you own, or have the necessary permissions to use and authorize the use of Your Content as described herein. You may not imply that Your Content is in any way sponsored or endorsed by Yelp.
\* \* \*
C. Ownership
As between you and Yelp, you own Your Content.
\* \* \*
F. Other
User Content (including any that may have been created by users employed or contracted by Yelp) does not necessarily reflect the opinion of Yelp. We reserve the right to remove, screen, edit or reinstate User Content from time to time at our sole discretion for any reason or no reason, and without notice to you. For example, we may remove a review if we believe it violates our Content Guidelines.
\* \* \*
12. … BY ACCESSING OR USING THE SITE, YOU REPRESENT THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO THESE TERMS, INCLUDING THIS SECTION.
A. THE SITE IS MADE AVAILABLE TO YOU ON AN "AS IS", "WITH ALL FAULTS" AND "AS AVAILABLE" BASIS, WITH THE EXPRESS UNDERSTANDING THAT THE YELP ENTITIES MAY NOT MONITOR, CONTROL OR VET USER CONTENT. AS SUCH, YOUR USE OF THE SITE IS AT YOUR OWN DISCRETION AND RISK. THE YELP ENTITIES MAKE NO CLAIMS OR PROMISES ABOUT THE QUALITY, ACCURACY, OR RELIABILITY OF THE SITE, ITS SAFETY OR SECURITY, OR THE SITE CONTENT.

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1  terminate their own accounts. Terms of Service, Aragon Decl., par. 4, Ex. B.,

2  Section 14(A) and (B).[2] *See also* Elite Terms, Aragon Decl., par. 6, Ex. D, Section

3  5.[3] The Content Guidelines also clarify that content submitted by users should be

4  relevant and appropriate for the forum—for example, noting that business reviews

5  should reflect a personal experience as opposed to relating the experience of

6  another, or that photos on a business listing should reflect a consumer experience

7  and not, for example, one's personal photo of friends or family (such photos,

8  however, are permitted on Yelp user profiles as opposed to business listings).

9  Content Guidelines, Aragon Decl., par. 5, Ex. C; *see also* Frequently Asked

10  Questions, Aragon Decl., par. 3, Ex. A, "User Reviews."

11      **C.**   **Yelp Elite Squad**

12      Yelp invites certain users to join the Elite squad, a program through which

13  Yelp recognizes certain users that frequently contribute quality content to Yelp's

14  websites. *See* Complaint, pars. 39-40, 53-54. Users that accept Yelp's invitation

15  receive access to special events that may include food and beverage tastings from

16  local businesses, and free promotional items with Yelp branding (i.e., schwag or

17  [2]    14.   TERMINATION

18      A.   You may terminate the Terms at any time by closing your
    account, discontinuing your use of the Site, and providing Yelp with a notice

19      of termination here. …

20      B.   We may close our account, suspend your ability to use certain
    portions of the Site, and/or ban you altogether from the Site for any or no

21      reason, and without notice or liability of any kind. Any such action could

22      prevent you form accessing your account, the Site, Your Content, Site
    Content, or any other related information.

23

24  [3]    5.   Termination

25      While we hope not to, Yelp may prohibit your attendance at any Yelp Event
    and/or terminate your Elite Squad membership at any time if you fail to abide

26      by these Elite Terms, the Terms of Service, or for any or no reason, without

27      notice or liability of any kind. You may terminate your Elite Squad
    membership and these Elite Terms at any time by sending a request to

28      feedback@yelp.com.

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

freebies).  *Id.*  In order to join the Yelp Elite, a user must agree to Yelp's Elite

Terms.  The Elite Terms make clear that Yelp Elite members are not employees of

Yelp, and that such members, or Yelp, may terminate Elite membership at any time.

Elite Terms, Aragon Decl., par. 6, Ex. D, Sections 5 and 7.[4]

### D.  Plaintiffs

Plaintiffs each assert sparse allegations about their individual circumstances.

Plaintiff Dr. Panzer alleges that he is domiciled in Houston, Texas, and has written

approximately 70 Yelp reviews since November 2007.  Complaint, par. 15.

Plaintiff Sayers alleges that she is domiciled in Portland, Oregon, that she has

written over 500 reviews for Yelp since 2006, and that she was a Yelp Elite

although Yelp later closed her user account.  Complaint, par. 16.  Plaintiff Jeung,

who was also a Yelp Elite, and whose user account was also closed, alleges that she

is domiciled in Los Angeles, California, and has written approximately 1,100

reviews.  Complaint, par. 17.  Plaintiff Walchesky alleges that he is domiciled in

Pittsburgh, Pennsylvania, and has written over 1,200 reviews, as well as 238

follow-up and updated reviews, and has taken and submitted 2,122 photographs.

Complaint, par. 18.

### E.  Plaintiffs' Purported Class

Plaintiffs plead their class action allegation as follows:

Plaintiffs in all claims, pursuant to the FLSA, 29 U.S.C. §216, on

behalf of themselves and all similarly situated persons, were

employees of Defendant, and were not paid wages for their work

---

[4]    7.    General Terms

You understand that you are not an employee, representative, or agent of
Yelp.  You agree that you will not represent yourself as an employee,
representative, or agent of Yelp.  We reserve the right to modify, update, or
discontinue the Elite Squad at our sole discretion, at any time, for any or no
reason, and without notice or liability.

1   published on Defendant's website; each performed duties relating to
2   the creation and promotion of content on behalf of Defendant,
3   including but not limited to writing researching, editing, lodging
4   reviews, upgrading prior reviews, and generally promoting the site,
5   during the period between four years prior to the filing of this
6   Complaint and until the date of final adjudication of this action (the
7   "FLSA Class").

8   Complaint, par. 22.

9       **F.    Materials Incorporated By Reference and Necessarily Relied**
10          **Upon by Plaintiffs in Their Complaint**

11      In their Complaint, Plaintiffs repeatedly reference and rely upon specific
12  Terms and other disclosures displayed on Yelp's website to support their
13  allegations.  Complaint pars. 20 ("in conjunction with its detailed policies and
14  procedures and terms and conditions, Defendant controls the behavior of its
15  workers and the placement and content of the their work product"); 40 ("Defendant
16  describes its 'Elite Squad' as a way of "recognizing and rewarding Yelpers who are
17  active evangelists and role models, both on and off the site'"); 48 ("By imposing
18  strict guidelines and policies on its reviewers, Defendant exercises full control over
19  the quality, tone, content, quantity, placement, and it's all-important star-rating
20  system."); 49 ("Plaintiffs . . . had to closely adhere to Defendant's contracts,
21  content guidelines, terms of service, and other policy statements"); 51 ("Defendant
22  directly and through its 'Community Managers' controls the writers with ethical
23  standards, often by deleting "non-conforming" work; by chastising its writers for
24  failing to follow Yelp rules; and dispensing so-called "guidelines" in form of
25  directives); and 60 ("Defendant retains pervasive control over the operation and
26  content of its website.").

27      Given these allegations, this Court may now consider the complete contents
28  of those referenced documents, guidelines, terms and disclosures, when assessing

11809881                                    - 6 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1 | Plaintiffs' allegations with respect to this Motion.[5]  Specifically, such documents
2 | and disclosures include Yelp's Frequently Asked Questions, Terms of Service,
3 | Content Guidelines, and Elite Squad Terms of Membership.

### III.   THE COURT SHOULD DISMISS PLAINTIFFS' FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA

#### A.   Rule 12(b)(6) Standard

A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) motion "rests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A court "need not assume the truth of legal conclusions cast in the form of factual allegation" (*U.S. ex rel Chunie v. Ringrose*, 788 F.2d 638, 643 (9th Cir. 1986).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*,

---

[5]   A "court may consider evidence on which the complaint 'necessarily relies, if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  *See also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

11809881

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1   181 F.R.D. 629, 634 (S.D. Cal. 1998). "In sum, for a complaint to survive

2   [dismissal], the non-conclusory 'factual content,' and reasonable inferences from

3   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

4   *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (*quoting Ashcroft v.*

5   *Iqbal* (2009) 556 U.S. 662, 678).

6   **B.     Plaintiffs Fail To State a Claim Under the FLSA Because They**

7   **Fail To Plausibly Establish That They Are Employees of Yelp**

8           Plaintiffs are not and never have been Yelp employees.  Section 3(e) of the

9   FLSA, 29 U.S.C. §203(e), defines "employee" "as any individual employed by an

10  employer."  Under Section 3(d) of the FLSA, an "employer" includes "any person

11  acting directly or indirectly in the interest of an employer in relation to an

12  employee."  29 U.S.C. § 203(d).  The determination of whether an

13  employer/employee relationship exists does not depend on "isolated factors but

14  rather upon the circumstances of the whole activity."  *Rutherford Food Corp. v.*

15  *McComb*, 331 U.S. 722, 730 (1947).  The "touchstone" is the "economic reality" of

16  the parties' relationship.  *Bonnette v. California Health & Welfare Agency*, 704

17  F.2d 1465, 1469 (9th Cir. 1983); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir.

18  2009) (*citing Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33

19  (1961)).  To determine whether an employer/employee relationship exists under the

20  FLSA, the Ninth Circuit applies a four-factor "economic reality" test that considers:

21  Whether the alleged employer (1) had the power to hire and fire the employees, (2)

22  supervised and controlled employee work schedules or conditions of employment,

23  (3) determined the rate and method of payment, and (4) maintained employment

24  records.  *See Lambert v. Ackerley*, 180 F.3d 997, 1001-02, 1012 (9th Cir. 1999);

25  *Bonnette*, 704 F.2d at 1470.

26          Guided by the above principles, Plaintiffs' allegations are insufficient to

27  establish the existence of any employer/employee relationship between Plaintiffs

28

1  and Yelp under the FLSA.[6]

2                           1.   **Yelp Has No Power to Hire or Fire**

3          The Complaint is devoid of plausible allegations that Yelp has the ability to

4  hire or fire the Plaintiffs and, indeed, it never hired or fired any of them.  This is

5  unsurprising given that each Plaintiff's sole relationship with Yelp is as a user of

6  Yelp's website.  Consistent with that fact, Plaintiffs only allege that at different

7  points in time, each Plaintiff began using Yelp's free website to share reviews and

8  photos, and make connections with other users.  Complaint, pars. 15-18.

9          Plaintiffs' Complaint never asserts that any Plaintiff was ever hired by Yelp,

10  and identifies no employment contracts, hiring process, or any other information

11  indicative of the commencement of an employment relationship with Yelp or any

12  other understanding that Yelp would pay them for their use of Yelp's free website.

13         Indeed, the only agreements referenced in the Complaint are Yelp's Terms of

14  Service and related policy and guideline documents that govern user of its websites

15  and directly contradict Plaintiffs' claim of employment.  *See* Terms, Aragon Decl.,

16  par. 4, Ex. B., Section 12 ("THE SITE IS MADE AVAILABLE TO YOU ON AN

17  "AS IS", "WITH ALL FAULTS" AND "AS AVAILABLE" BASIS, WITH THE

18  EXPRESS UNDERSTANDING THAT THE YELP ENTITIES MAY NOT

19  MONITOR, CONTROL OR VET USER CONTENT.  AS SUCH, YOUR USE OF

20  THE SITE IS AT YOUR OWN DISCRETION AND RISK.");  Elite Terms, Aragon

21  Decl., par. 6, Ex. D, Section 7 ("You understand that you are not an employee,

22  representative, or agent of Yelp.  You agree that you will not represent yourself as

23  _____

24  [6]      In their Complaint, Plaintiffs rely on the "relative nature of the business" test
   to support their claim that they are employees of Yelp.  While Plaintiffs would fail
25  this test as well, Plaintiffs' reliance is misplaced because this is the wrong test.
   Specifically, the "relative nature of the business" is one of six factors identified by
26  courts as useful in distinguishing an "employee" from an "independent contractor"
   for purposes of FLSA.  *See Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370
27  (9th Cir. 1981); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th
   Cir. 1979).  These tests are inapplicable because Yelp has never identified Plaintiffs
28  as "independent contractors" (nor has this been alleged), and Plaintiffs are neither
   independent contractors nor employees of Yelp.

11809881                                          - 9 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS
ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1  an employee, representative, or agent of Yelp."). These user agreements—coupled

2  with the lack of any allegations concerning an express or implied employment

3  agreement—make clear that no plausible employment relationship between

4  Plaintiffs and Yelp exists. *See Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir.

5  1996) ("Williams had neither an express nor an implied agreement for

6  compensation with the Salvation Army and thus was not an employee."); *Tasini v.*

7  *AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012) (dismissing state law

8  equitable claims of "unpaid content providers" because "plaintiffs submitted their

9  materials to The Huffington Post with no expectation of monetary compensation

10  and that they got what they paid for — exposure in The Huffington Post"), *aff'd*,

11  505 Fed. Appx. 45 (2d.Cir. 2012).

12       Further, the Complaint's reference to Yelp's closures of the user accounts of

13  Plaintiffs Sayers and Jeung—contrary to the implausible allegation that this

14  constitutes "firing"—is not related to any termination of employment.  Instead,

15  Plaintiffs Sayers and Jeung describe only the termination of their free user accounts

16  for violation of Yelp's Terms.  Complaint, pars. 16, 17 (stating for each that "[h]er

17  licence to write reviews . . . [was] revoked; the awards she had attained were taken

18  away; and her reviews were removed from the website, and she has been refused

19  access to her own writings"); 46 ("their badges and licenses were revoked; their

20  status and reputation sanctimoniously stripped away; and their extensive work

21  product deleted from the system with no recourse or ability to recover it"); 47 ("Not

22  only was my review removed, but I also received an e-mail cancelling my Yelp

23  account and stating that I could no longer write reviews or get access to any that I

24  had written. I was fired by Yelp for supposedly breaking one of their rules, which I

25  didn't.").

26       Of course, despite the Complaint's imaginative conclusion equating "an e-

27  mail cancelling [a] Yelp account" with being "fired," such account closures are

28  entirely consistent Plaintiffs' status as users of Yelp, rather than employees, and are

disclosed in the Terms of Service repeatedly referenced in the Complaint.  Terms of Service, Aragon Decl., par. 4, Ex. B, Section 14; Elite Terms, Aragon Decl., par. 6, Ex. D, Section 5.

Plaintiffs' failure to allege any plausible facts showing that Yelp has the ability to hire or fire them, much less facts showing any employment agreement—implicit or explicit— supports the economic reality that Plaintiffs' are not Yelp's employees under the FLSA.  *Strickland*, 87 F.3d at 1067.

## 2.    Yelp Lacks Supervision and Control of Plaintiffs' Work Schedules or Conditions

Plaintiffs fail to allege that Yelp has, or ever had, any control over the Plaintiffs' work schedules, working conditions, equipment or any other component of a legitimate employment relationship.  Instead, Plaintiffs make:

a.    blanket allegations that Yelp controls its own "employees" (Complaint pars. 4, 9, 20, 44);

b.    allegations that Yelp "urges" individuals to use its services, educates users about the use of its services, and maintains and enforces it Terms and other policies relating to the use of its services (Complaint, pars. 43, 45-52, 55-58);

c.    allegations that Yelp's services themselves control Plaintiffs through "motivational awards" that encourage users to keep using Yelp's website (Complaint, pars. 38, 40, 41); and

d.    allegations that the Yelp Elite squad is a form of control because members may receive free promotional items from Yelp, and may lose Elite status if they cease using Yelp's services (Complaint, pars. 39, 53, 54, 57).

### a.    Yelp's alleged control over "employees"

It is true that Yelp exercises control over its <u>actual</u> employees, i.e., those individuals it hires including software engineers, salespeople, community managers, and accountants.  That group does not, however, include Plaintiffs or

11809881

- 11 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1   others like them, who simply use Yelp's website and have never entered into any
2   employment relationship with Yelp.  The barebones allegations that Yelp controls
3   the work of its actual employees (including their pay and work schedules) does not
4   plausibly support a conclusion that Yelp therefore must control the Plaintiffs.[7]

5                          b.   **Yelp allegedly "urges", "encourages" and**
6                                  **"educates" its users**

7          The second category of allegations that Yelp encourages the use of its
8   website, educates users about its website, and manages its website through written
9   Terms, also do not evidence any control of the employment of Plaintiffs under the
10  FLSA.  For example, the Complaint does not allege that Yelp required Plaintiffs to
11  use its website at all, much less that Yelp supervised or scheduled the creation of
12  their content or its posting on Yelp's website, mandated creation of website content
13  at a certain place or using certain equipment, or otherwise forced Plaintiffs to
14  submit any website content at all to Yelp, much less any particular content.

15         Instead, the Complaint merely recites that Yelp—consistent with its role as
16  an online forum—educates its end-users, such as Plaintiffs, about how to use its
17  websites, "urges" the use of its services, and maintains and enforces its Terms and
18  other policies once users post content to Yelp's website.  For example, the
19  Complaint vaguely asserts, without factual basis, that Yelp "urges" and "directs"
20  individuals to write reviews for its website.  Complaint, pars. 16-18, 43.  Plaintiffs
21  also allege that Yelp—like any online business—generally encourages consumers
22  to use its website.  Complaint pars. 53, 58.  But these allegations of encouragement
23  do not plausibly translate into any type of actual control of the Plaintiffs, and only
24  reflect Yelp's own efforts to market its website to consumers like the Plaintiffs.

25  ────────────────
    [7]     Plaintiffs repetitive allegations that Yelp designates "workers" or
26  "employees" as "'reviewers' or 'Yelpers' or 'independent contractors' or 'interns'
    or 'volunteers' or 'contributors'" are irrelevant.  Complaint, pars. 6, 9, 65.  There is
27  no allegation that Yelp used terms such as "intern" or "independent contractor" in
    relation to the Plaintiffs, and it did not.  Similarly, the fact that Yelp recruits interns
28  (who are paid) does not mean that Yelp hired any Plaintiff as an intern—it did not.
    Complaint, par. 62.
    11809881                              - 12 -
MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS
ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1    Similarly, Plaintiffs repeatedly take issue with the fact that Yelp promulgates
2  Terms and policies relating to online content, and once content is posted to its
3  website, may enforce those Terms and policies to correct violations (including
4  account closures and content removal).  Complaint, pars. 16, 17, 45-47 (referring to
5  account closures of Plaintiffs Sayers and Jeung for violations of Yelp's Terms); 43
6  (asserting that Yelp communicates the appropriate places on its site for different
7  kinds of content); 48-51, 55-58 (asserting that Yelp maintains and applies Terms
8  governing use of its site).[8]  But these supposed grievances of Plaintiffs are not the
9  complaints of employees, but the gripes of end-users of Yelp's free services who
10  disagree with the way Yelp administers its websites.  *E.g.*, Complaint, par. 56 ("I
11  loved Yelp until I got an email from them saying they have taken off my photos due
12  to the pictures being my 'personal experience' and that the reason behind taking off
13  my photos is because it does not 'portray the business as a whole.'") citing Content
14  Guidelines ("Photo Guidelines"), Aragon Decl., par. 5, Ex. C.

15    Further, Yelp's Terms make clear that Plaintiffs alone owned, and were
16  ultimately responsible for, the submission of their own content.  Terms of Service,
17  Aragon Decl., par. 4, Ex. B, Section 5(A) ("You alone are responsible for Your
18  Content, and once published, it cannot always be withdrawn.  You assume all risks
19  associated with Your Content, including anyone's reliance on its quality, accuracy,
20  or reliability . . . You may not imply that Your Content is in any way sponsored or
21  endorsed by Yelp."); Section 5(C) ("As between you and Yelp, you own Your
22  Content."); Section 12(A) ("THE SITE IS MADE AVAILABLE TO YOU ON AN
23  "AS IS", "WITH ALL FAULTS" AND "AS AVAILABLE" BASIS, WITH THE
24  EXPRESS UNDERSTANDING THAT THE YELP ENTITIES MAY NOT
25  MONITOR, CONTROL OR VET USER CONTENT. AS SUCH, YOUR USE OF

26  
27  [8] Plaintiffs speculate that Yelp took action on posted content and user accounts to specifically benefit advertisers.  Such allegations are conclusory and incorrect, but are also irrelevant and appear intended solely to harm Yelp's reputation.
28

11809881                               - 13 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

THE SITE IS AT YOUR OWN DISCRETION AND RISK.").  Such disclosures further demonstrate that while Yelp, of course, has control over its own websites, it has no control over Plaintiffs' themselves.

### c.     Yelp's alleged "motivational awards"

Plaintiffs' third category of allegations relate to "motivational rewards" implicit in Yelp's website itself, such as publicly noting when a user is the "First to Review" a particular business, or when a user "checks-in" extensively to a certain establishment through Yelp's mobile applications.  Complaint, pars. 38, 40-41. These allegations, however, merely describe Yelp's website itself and highlight some features that may drive Yelp's popularity with the Plaintiffs and users like them.  Such allegations cannot show any plausible form of employer control over the Plaintiffs any more than the "motivational reward" in getting the high score in a video game suggests that the game's manufacturer employs its players.

### d.     Yelp's alleged control through the Elite Squad

Plaintiffs' fourth set of allegations concerning the Yelp Elite squad—Yelp's recognition program for certain users—also do not establish any employment relationship.  Complaint, pars. 39, 53-54.  The fact that some of the Plaintiffs once participated in this program, enjoyed the perks of such participation, and continued using Yelp's free services in efforts to keep participating, does not create an employment relationship with Yelp.  Indeed, the Yelp Elite program is analogous to participation in an airline frequent flyer program—simply because the airline urges such participants to use their services, rewards them for doing so with special privileges and status (free drink coupons, entry to the airport club, early boarding), and may remove such status in its own discretion, does not turn the participants into employees of the airline.  Further, the Elite Terms that the Elite program explicitly state that members of the Elite squad are not employees of Yelp, cutting against any expectation of an employment relationship.  Elite Terms, Aragon Decl., par. 6, Ex. D, Section 7.

3.   **Plaintiffs' Allegations Are Insufficient to Establish That Yelp Determined Rate and Methods of Payment**

Yelp did not determine rates or methods of payment to Plaintiffs, as no payments were made. There is no allegation that Yelp ever offered or promised to pay any Plaintiff, or that any Plaintiff ever expected to receive any payments from Yelp for their use of Yelp's services. While the Complaint references free promotional items that Yelp distributes in efforts to market its website to users like the Plaintiffs—actions equal to those taken by virtually any other major service provider—there is no allegation that these freebies were given in return for any specific work, or for any other reason than for Yelp to promote itself and its services to the public. Complaint, par. 38 (describing rewards as "trinkets, badges, titles, praise, social promotion, free liquor, free food, and free promotional Yelp attire").

4.   **Plaintiffs' Allegations Are Insufficient to Establish That Yelp Maintained Employment Records**

Yelp does not maintain employment records for Plaintiffs because Plaintiffs were never employees of Yelp. No such employment records are alleged in the Complaint. The only records alleged in the Complaint are the Terms and related documents, which starkly contradict any allegation of employment. *See* Frequently Asked Questions, Aragon Decl., par. 3, Ex. A; Terms, Aragon Decl., par. 4, Exs. B & C; Elite Terms, Aragon Decl., par. 6, Ex. D. *Strickland*, 87 F.3d at 1067.

\*          \*          \*

Under Plaintiffs' theory of liability, popular websites like Amazon, Facebook, eBay, Google and Twitter would suddenly gain hundreds of millions of employees, all entitled to billions of dollars in payment by the mere fact that they have used these online forums to express themselves through content contributions. Under this wild theory, anyone can become an employee of a website merely through the act of posting content to it. This is plainly an absurd argument, and

11809881                                   - 15 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

tellingly, Plaintiffs' Complaint lacks allegations sufficient to plausibly show that Plaintiffs are, or ever were, employees of Yelp, and instead, tend to show that they were not employees. The Court should dismiss Plaintiffs' claim for FLSA violations. *See Brouwer v. Metropolitan Dade County*, 139 F.3d 817, 818 (11th Cir. 1998) (affirming Rule 12(b)(6) dismissal of juror's FLSA claim and finding that economic reality was that juror was not employee of county).

## IV.   THE COURT SHOULD STRIKE PURPORTED CLASS ACTION ALLEGATIONS UNDER RULE 12(F)

### A.   Rule 12(f) Standard

Rule 12(f) allows the court to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." *See also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-974 (9th Cir. 2010). Where the complaint demonstrates that a class action cannot be maintained on the allegations at the pleading stage, courts have relied on Rule 12(f) to strike class allegations at an early stage of a lawsuit. *See Lyons v. Bank of Am.*, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (*citing Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S 517. *See also Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *15-16 (N.D. Cal. Dec. 4, 2009); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (addressing the use of Rule 12(f) and noting that "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008).

### B.   Plaintiffs Fail to Define any Ascertainable Class

Courts have held that a class must be adequately defined and clearly ascertainable before a class action may proceed. *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679-680 (S.D. Cal. 1999). *See also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007). A class definition should be "precise, objective

11809881                          - 16 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1  and presently ascertainable." *O'Connor v. Boeing North American, Inc.,* 184

2  F.R.D. 311, 319 (C.D. Cal. 1998).  "An adequate class definition specifies 'a

3  distinct group of plaintiffs whose members [can] be identified with particularity.'"

4  *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 593 (E.D. Cal. 2008)

5  (*quoting Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.

6  1978).

7      Plaintiffs fail to meet their burden of defining an ascertainable class in their

8  Complaint.  Instead, Plaintiffs baldly allege that they were "employees of

9  Defendant, and were not paid wages for their work published on Defendant's

10  website; each performed duties relating to the creation and promotion of content on

11  behalf of Defendant, including but not limited to writing, researching, editing,

12  lodging reviews, upgrading prior reviews, and generally promoting the site", and

13  that the class consists of those who are similarly situated to them.  Complaint, par.

14  22. Such allegations by Plaintiffs are insufficient to objectively identify an

15  ascertainable class.

16      First, each Plaintiff's claims depend upon their individual circumstances and

17  unique interactions with Yelp. *See* Complaint, pars. 15-18.  Plaintiffs' allege—

18  without factual support— that they had "duties", but there is enormous variation

19  among Plaintiffs themselves, and among Plaintiffs and other consumers of Yelp's

20  websites regarding at least:  each of their respective individualized communications

21  or interactions with Yelp; each of their individualized content contributions posted

22  to Yelp (for example whether, and how, Yelp imposed "duties" of content creation

23  in relation to each particular contribution, and whether each particular contribution

24  conformed to Yelp's Terms); and the respective state of mind of each of the

25  individual users of Yelp's websites with respect to their relationship with Yelp (for

26  example, did a Yelp user somehow feel forced to perform "duties" of content

27  contribution, or did the user simply like to use Yelp's free website).

28  ///

11809881                                    - 17 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS
ACTION ALLEGATIONS (RULE 12(F))

11884974-2

1        Second, as described above, named Plaintiffs' claims to be "employees" are

2    implausible legal conclusions. Identifying the class as "employees" necessitates the

3    question of whether an employer/employee relationship exists under FLSA between

4    Yelp and each of the tens of millions of rank and file users of Yelp's online

5    services—relationships that Yelp denies exists and which the allegations of the

6    Complaint do not support even for the named Plaintiffs.  It is impossible to

7    ascertain which individuals could possibly be included in this putative "class" of

8    "employees" when there are no uniform facts demonstrating an employee/employer

9    relationship for each user of Yelp's free websites.

10       Consequently, Plaintiffs' purported class action allegations should be

11   stricken.  This Court should exercise its discretion to strike Plaintiffs' spurious

12   allegations relating to its proposed unascertainable class. *See Fantasy, Inc.*, 984

13   F.2d at 1527.

14   **V.     CONCLUSION**

15       Based on all of the foregoing, pursuant to Rule 12(b)(6), this Court should

16   dismiss, with prejudice, Plaintiffs' First Cause of Action for Violation of the FLSA.

17   In addition, the Court should strike, with prejudice, Plaintiffs' purported class

18   action allegations pursuant to Rule 12(f).

19

20   Dated: November 27, 2013          RESPECTFULLY SUBMITTED,

21                                  LECLAIRRYAN, LLP

22

23                      By:  /s/ Angeli Aragon

24                           James C. Potepan

25                           Angeli Aragon

                        Attorneys for Defendant YELP INC.

26

27

28

11809881                                              - 18 -

MOTION TO DISMISS FIRST CAUSE OF ACTION FOR VIOLATION OF THE FLSA (RULE 12(B)(6), AND TO STRIKE CLASS ACTION ALLEGATIONS (RULE 12(F))

11884974-2