1  CALIFORNIA ANTI-SLAPP PROJECT
   Mark Goldowitz, No. 96418
2          email:  mg@casp.net
   Paul Clifford, No. 119015
3  Shanti Michaels, No. 268904
   Evan Mascagni, No. 277552
4  2903 Sacramento Street
   Berkeley, California 94702
5  Phone:  (510) 486-9123
   Fax:      (510) 486-9708
6
   YELP INC.
7  Aaron Schur, No. 229566
          email:  aschur@yelp.com
8  140 New Montgomery Street
   San Francisco, CA 94105
9  Phone: (415) 908-3801
   Fax:      (415) 615-0809
10
   Attorneys for Defendant YELP INC.
11

12              UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14                  (WESTERN DIVISION)

15  DR. ALLEN PANZER, et al.,        )   Case No. 2:13-cv-07805-DDP-JCG
                                     )
16            Plaintiffs,            )   DEFENDANT YELP INC.'S NOTICE OF
          vs.                        )   MOTION AND SPECIAL MOTION TO
17                                   )   STRIKE; MEMORANDUM OF POINTS
   YELP INC.,                        )   AND AUTHORITIES
18                                   )   [CAL. CODE  CIV. PROC. § 425.16]
              Defendant.             )
19                                   )   Date:         February 10, 2014
                                     )   Time:         10:00 a.m.
20                                   )   Courtoom:     3 - 2nd Floor
                                     )   Judge:        Hon. Dean D. Pregerson
21                                   )   Action Filed:  October 22, 2013
                                     )   Complaint Served:  October 25, 2013
22  _____ )
                                         [filed in conjunction with declarations of
23                                       Vince Sollitto, Ian MacBean, and Mark
                                         Goldowitz]
24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on February 10, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Dean D. Pregerson in Courtroom 3 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA, defendant Yelp Inc. ("Yelp") will and hereby does move this Court, pursuant to California Code of Civil Procedure § 425.16 ("§ 425.16"), California's anti-SLAPP statute, for an order striking the second and third claims of Plaintiffs' Complaint.

This motion is made on the grounds that Plaintiffs' quantum meruit and unjust enrichment claims are subject to § 425.16(e)(4) because they arise from Yelp's conduct in furtherance of free speech rights about issues of public interest, and Plaintiffs will not be able to establish a probability that they will prevail on their claims.  Therefore, the second and third claims should be stricken, pursuant to § 425.16(b)(1), and Yelp should be awarded its attorneys' fees and costs, pursuant to § 425.16(c).

This special motion to strike is made following conferences of counsel, pursuant to Central District Local Rule 7-3, on December 17 and 23, 2013.  The special motion to strike is based upon this notice; the attached memorandum of points and authorities; the concurrently-filed declarations of Ian MacBean, Vince Sollitto, and Mark Goldowitz; any other documents that may be filed in connection with this motion; any other matters of which this Court may take judicial notice; all pleadings, files, and records in this action; and upon such other argument as may be received by this Court at the hearing on this motion.

DATED:  December 31, 2013          CALIFORNIA ANTI-SLAPP PROJECT

By:  /s/ Mark Goldowitz
     Mark Goldowitz

Attorneys for Defendant YELP INC.

# TABLE OF CONTENTS

NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE. . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY.. . . . . . . . . . . . 1

    A.   Yelp Inc.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Yelp.com Is a Public Forum Where Consumers Can Share Information
        and Opinions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.   Pursuant to Yelp's Terms of Service and Other Written Policies, Users
        Are Not Compensated for Their Content. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.   Yelp Elite Squad. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    E.   Plaintiffs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    F.   Plaintiffs Submitted Their Content to Yelp Without any Reasonable
        Expectation of Monetary Compensation.. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    G.   Plaintiffs Received Non-Monetary Benefits from Using Yelp.. . . . . . . . . . 6

    H.   Procedural History.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  PLAINTIFFS' STATE LAW CLAIMS FOR QUANTUM MERUIT AND
    UNJUST ENRICHMENT ARE COVERED BY THE CALIFORNIA ANTI-
    SLAPP LAW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   The California Anti-SLAPP Law Was Enacted to Protect the
        Fundamental Constitutional Rights of Petition and Speech, and Is to
        Be Construed Broadly.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   Section 425.16 Sets Forth a Two-step Analysis.. . . . . . . . . . . . . . . . 9

        2.   The Scope of Acts Covered by Section 425.16.. . . . . . . . . . . . . . . . 9

        3.   Treatment of Mixed Causes of Action. . . . . . . . . . . . . . . . . . . . . . . . 9

        4.   Section 425.16 Applies to State Claims in Federal Court.. . . . . . . . 10

1        B.     Plaintiffs' State Claims Arise From Yelp's Publication and Operation

2                of Its Consumer Information Website, Conduct That Is Protected

3                by § 425.16(e)(4), Because It Is in Furtherance of the Right of Free

4                Speech in Connection with Issues of Public Interest.. . . . . . . . . . . . . . . . 11

5                1.     Consumer Information Published on Yelp's Website Is an Issue

6                       of Public Interest.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7                2.     Yelp's Publication of Consumer Information and Operation of Its

8                       Website Is Conduct in Furtherance of the Right of Free Speech. . . 13

9   III.   PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF PREVAILING

10       ON THEIR QUANTUM MERUIT OR UNJUST ENRICHMENT CLAIMS.. . . 15

11       A.     Plaintiffs' Quantum Meruit Claim Has No Merit Because They Had No

12                Reasonable Expectation of Monetary Compensation.. . . . . . . . . . . . . . . . 15

13       B.     Plaintiffs' Unjust Enrichment Claim Has No Merit Because There Is No

14                Such Cause of Action in California.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15       C.     Plaintiffs' Class Action Allegations Have No Merit Because Plaintiffs

16                Cannot Show Ascertainability or Commonality.. . . . . . . . . . . . . . . . . . . 19

17   IV.   THIS MOTION SHOULD BE GRANTED AND YELP SHOULD BE

18       AWARDED ITS ATTORNEYS' FEES AND COSTS.. . . . . . . . . . . . . . . . . . . 19

19   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20

21

22

23

24

25

26

27

28

DEFENDANT'S SPECIAL MOTION TO STRIKE; MEMORANDUM

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). . . . . . 14

*Hilton v. Hallmark Cards,* 599 F.3d 894 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 11, 14

*In re De Laurentiis Entertainment Group Inc.,* 963 F.2d 1269 (9th Cir. 1992). . . . . . . . 16

*Makaeff v. Trump University, LLC,* 715 F.3d 254 (9th Cir. 2013). . . . . . . . . . . . . . . . . 10

*Makaeff v. Trump University, LLC,* 736 F.3d 1180 (9th Cir. 2013). . . . . . . . . . . . . . . . 11

*Martin v. Struthers,* 319 U.S. 141, 63 S. Ct. 862, 87 L. Ed. 1313 (1943). . . . . . . . . . . 15

*Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . 8

*Metabolife Int'l., Inc. v. Wornick,* 213 F. Supp. 2d 1220 (S.D. Cal. 2002). . . . . . . . . . 20

*Price v. Stossel,* 590 F. Supp. 2d 1262  (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . 10

*Price v. Stossel,* 620 F.3d 992 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Tasini v. AOL,* 851 F. Supp. 2d 734 (S.D. N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Tasini v. AOL*, 505 Fed. Appx. 45, 2012 U.S. App. LEXIS 25323 (2d. Cir. 2012). . . . . 17

*Thomas v. Fry's Electronics, Inc.,* 400 F.3d 1206 (9th Cir. 2005). . . . . . . . . . . . . . . . . 10

*Thomas v. L.A. Times Communications LLC,* 189 F. Supp. 2d 1005 (C.D. Cal. 2002). . 20

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,*
     190 F.3d 963 (9th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 20

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*,
     425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) . . . . . . . . . . . . . . . . . . . . 15

*Wal-Mart Stores, Inc. v. Dukes*, _ U.S. _, 131 S. Ct. 2541, 180 L. Ed. 2d 374,
     2011 U.S. Lexis 4567 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATE CASES**

*Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106,
     81 Cal. Rptr. 2d 471 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Carver v. Bonds,* 135 Cal. App. 4th 328, 37 Cal. Rptr. 3d 480 (2005). . . . . . . . . . . . . 13

*Chaker v. Mateo*, 209 Cal. App. 4th 1138, 147 Cal. Rptr. 3d 496 (2012). . . . . . . . . . . 13

*///*

DEFENDANT'S SPECIAL MOTION TO STRIKE; MEMORANDUM

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628,
    49 Cal. Rptr. 2d 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 103 Cal. Rptr. 2d 174 (2001) . . . . . . . 12

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682 (2010) . . . 17

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53,
    124 Cal. Rptr. 2d 507 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294,
    106 Cal. Rptr. 2d 906 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures,* 1
    84 Cal. App. 4th 1539, 110 Cal. Rptr. 3d 129 (2010). . . . . . . . . . . . . . . . . . . . 10

*Hupp v. Freedom Communications, Inc.*, 221 Cal. App. 4th 398,
    163 Cal. Rptr. 3d 919 (2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Huskinson & Brown v. Wolf,* 32 Cal. 4th 453, 9 Cal. Rptr. 3d 693 (2004) . . . . . . . . . . 16

*Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050,
    28 Cal. Rptr. 3d 933 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990,
    90 Cal. Rptr. 2d 665 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156,
    1 Cal. Rptr. 3d 536 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Levine v. Blue Shield of California*, 189 Cal. App. 4th, 1117,
    117 Cal. Rptr. 3d 262 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McBride v. Boughton*, 123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (2004) . . . . . . . . . 17

*Melchior v. New Line Productions., Inc.*, 106 Cal. App. 4th 779,
    131 Cal. Rptr. 2d 347 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Navellier v. Sletten*, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002).. . . . . . . . . . . . . . 9, 15

*Nygård v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008).. . . . . . 11

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
    133 Cal. App. 4th 658, 35 Cal. Rptr. 3d 31 (2005) . . . . . . . . . . . . . . . . . . . . . . 10

DEFENDANT'S SPECIAL MOTION TO STRIKE; MEMORANDUM

*Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 42 Cal. Rptr. 2d 464 (1995). . . . . . . . . 20

*Salma v. Capon*, 161 Cal. App. 4th 1275, 74 Cal. Rptr. 3d 873 (2008). . . . . . . . . . . . . 10

*Seelig v. Infinity Broadcasting Corp.,* 97 Cal. App. 4th 798,

      119 Cal. Rptr. 2d 108 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simpson Strong-Tie Company v. Gore*, 49 Cal. 4th 12, 109 Cal. Rptr. 3d 329 (2010). . . 9

*Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 142 Cal. Rptr. 3d 40 (2012). . . . . . . . . 13

*Tamkin v. CBS Broadcasting, Inc*., 193 Cal. App. 4th 133,

      122 Cal. Rptr. 3d 264 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Taus v. Loftus*, 40 Cal. 4th 683, 54 Cal. Rptr. 3d 775 (2007). . . . . . . . . . . . . . . . . . . . . 14

*Van Nuys Publishing Co. v. City of Thousand Oaks,* 5 Cal. 3d 817,

      97 Cal. Rptr. 777 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Varian Medical Systems v. Delfino*, 35 Cal. 4th 180, 25 Cal. Rptr. 3d 298 (2005). . . . 8, 9

*Weaver v. Jordan,* 64 Cal. 2d 235, 49 Cal. Rptr. 537 (1966) . . . . . . . . . . . . . . . . . . . . . 15

*Wescoatt v. Meeker*, 63 Cal. App. 2d 618, 147 P.2d 41 (1944). . . . . . . . . . . . . . . . . . . . 16

*Wilbanks v. Wolk* 121 Cal. App. 4th 883, 17 Cal. Rptr. 3d 497 (2004). . . . . . . . . . . . . . 12

*Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811,

      123 Cal. Rptr. 2d 19 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATE STATUTES**

California Code of Civil Procedure

§ 425.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

§ 425.16(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 425.16(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 425.16(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 19

§ 425.16(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 425.16(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DEFENDANT'S SPECIAL MOTION TO STRIKE; MEMORANDUM

§ 425.16(e)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1992 Cal. Stats., ch. 726, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1997 Cal. Stats., ch. 271, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DEFENDANT'S SPECIAL MOTION TO STRIKE; MEMORANDUM

**INTRODUCTION.**

The Internet has revolutionized the way we express ourselves and share information.  This is especially true for consumer information, as the public no longer needs to rely on purchased advertisements or the paid "experts" of traditional media of print, television, and radio – information sources that may be opaque or even untrustworthy.  In modern public forums, like Yelp.com, anyone with access to the Internet can freely voice a perspective and read millions of disparate opinions about local services and community issues.

Plaintiffs' claims against Yelp arise from the publication and operation of its consumer information website that, by providing a platform for such direct exchange of ideas and information, is conduct in furtherance of the right of free speech about issues of public interest.  Such conduct is protected by California's anti-SLAPP statute, California Code of Civil Procedure section 425.16 ("§ 425.16").

Since Plaintiffs' second and third claims are subject to § 425.16, Plaintiffs must show that they have a probability of prevailing on them.  They cannot do so.  Like tens of millions of other users of Yelp's free services, Plaintiffs voluntarily posted their content to Yelp.  In exchange for this content, Plaintiffs received  – like all other Yelp users – exposure and widespread publication for the benefit of the broader public.  Now, despite repeatedly agreeing to Terms of Service that did not provide for monetary compensation, Plaintiffs now claim that they should be paid for the content they contributed.

Because § 425.16 applies to Plaintiffs' claims and Plaintiffs cannot show a probability of prevailing on them, this Court should grant Yelp's special motion to strike the second and third claims of the Complaint.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

**A.      Yelp Inc.**

Defendant Yelp Inc. ("Yelp") owns and operates Yelp.com, a popular social

1

networking and consumer information website, and related mobile applications (collectively "Yelp.com"), for users to share information about local communities worldwide. Yelp, among other things, provides and publishes a forum for members of the public to read and write reviews about local businesses, services, and other entities such as non-profit organizations and government agencies. Yelp was born out of a belief that the best source for information about a local community is the community members themselves, and that, prior to Yelp.com, it was all but impossible to broadly tap into the knowledge of the local community. Yelp.com helps the public make more informed choices about local businesses and activities. Sollitto Decl., ¶ 2.

**B.    Yelp.com Is a Public Forum Where Consumers Can Share Information and Opinions.**

Yelp.com is available for the general public to read at no charge and without any registration requirement. Any member of the public who does register with the site can write reviews, submit photos, and access other various features, such as message boards and communication tools. Yelp does not charge users to register a Yelp account. All that is required is a name, zip code, and functional email address, as well as agreement to Yelp's Terms of Service and Privacy Policy. Sollitto Decl., ¶ 3. Yelp operates in the United States and in 23 other countries. As of September 30, 2013, users had posted over 47 million reviews to Yelp. Yelp had an average of approximately 117 million monthly unique visitors during the third quarter of 2013. Yelp's mobile applications were used on approximately 11.2 million unique mobile devices, on an average monthly basis, during that quarter. *Id.*, ¶ 7 and Exhibit A.

Users can contribute information about their communities by writing reviews about local businesses and public attractions, posting comments on message boards on a variety of topics, and sharing information about upcoming events in the area. User reviews can cover a broad range of local businesses, including commercial, public, and nonprofit organizations, such as schools, dentists, child care providers, restaurants, and places of worship. Sollitto Decl., ¶ 4.  Yelp is also a local search engine that allows

1 users to find businesses by entering search queries and specifying a geographic location,
2 and offers a variety of other free services. *Id.*, ¶ 15.

3      A user can judge how much weight to give any particular review by viewing the
4 reviewer's Yelp account profile, reading his or her reviews, and considering detailed
5 statistics about such reviews. Sollitto Decl., ¶ 5. Business owners and service providers
6 can also freely post public responses to the reviews that they receive on Yelp.com and
7 can contact the reviewers privately to engage in further dialogue. *Id.*, ¶ 6. Reviews can
8 include detailed service descriptions and an overall rating on a 1 to 5 "star" scale. Other
9 users may vote reviews to be "useful," "funny" or "cool." All of these features are free.
10 *Id.*, ¶ 8. In general, reviews on Yelp are more often positive than negative. *Id.*, ¶ 12.

11      To support its free services, Yelp sells advertising packages, "Yelp Ads,"
12 that enable businesses or service providers to promote their offerings on Yelp.com. To
13 promote integrity and objectivity, Yelp advertisers cannot delete, change, or re-order
14 ratings or reviews. "Yelp Ads" may incorporate content supplied by the advertising
15 business, and/or review snippets and ratings supplied by Yelp's registered users. Sollitto
16 Decl., ¶ 16.

17     **C.**    **Pursuant to Yelp's Terms of Service and Other Written Policies, Users**
18            **Are Not Compensated for Their Content.**

19      Like other websites, Yelp maintains Terms of Service ("TOS") , Content
20 Guidelines, Frequently Asked Questions ("FAQ"), and other policy statements that set
21 limits on how individuals may use Yelp's services. Complaint, ¶¶ 48, 49. See Yelp's
22 FAQ, Aragon Supp. Decl., Dkt. No. 13, ¶ 3, Exhibit A; TOS, MacBean Decl., ¶ 3,
23 Exhibit A; Content Guidelines, Aragon Supp. Decl., Dkt. No. 13., ¶ 5, Exhibit C; Elite
24 Squad Terms of Membership ("Elite Terms"), MacBean Decl., ¶ 8, Exhibit D.

25      The TOS make clear that Yelp users may not and will not be compensated
26 monetarily for the content they submit to Yelp. A section entitled "Our Right to Use
27 Your Content" provides that "We may use Your Content in a number of different ways
28 . . . . As such, you hereby irrevocably grant us world-wide, perpetual, non-exclusive,

royalty-free, assignable, sublicensable, transferable rights to use Your Content for any purpose." TOS, ¶ 5.B.   The section on "Ownership" states:   "We own the Yelp Content . . . .   Except as expressly and unambiguously provided herein, we do not grant you any express or implied rights, and all rights in and to the Site and the Yelp Content are retained by us."   *Id.*, ¶ 5.C.   The section on "Advertising" states:   "Yelp and its licensees may publicly display advertisements and other information adjacent to or included with Your Content.   You are not entitled to any compensation for such advertisements."   *Id.*, ¶ 5.D.   One of the "RESTRICTIONS" is:   "You agree not to, and will not assist, encourage, or enable others to use the Site to:   [¶]   Violate our Content Guidelines, for example, by . . . compensating someone or being compensated to write or remove a review."   *Id.*,   ¶ 6.A.i.[1]   The TOS state that Yelp may terminate user accounts at any time, and allow users to terminate their own accounts.   TOS, ¶ 14.[2]   The TOS provide that "BY ACCESSING OR USING THE SITE, YOU REPRESENT THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO THESE TERMS, INCLUDING THIS SECTION."   TOS, ¶ 12.

### D.   Yelp Elite Squad.

Yelp invites certain users to join the Elite Squad, a program through which Yelp recognizes certain users who frequently contribute quality content to Yelp.com.   See Complaint, ¶¶ 39-40, 53-54.   Users who accept Yelp's invitation receive access to

---

[1] See also TOS, ¶¶ 12.D ("YOUR SOLE AND EXCLUSIVE RIGHT AND REMEDY IN CASE OF DISSATISFACTION WITH THE SITE, RELATED SERVICES, OR ANY OTHER GRIEVANCE SHALL BE YOUR TERMINATION AND DISCONTINUANCE OF ACCESS TO, OR USE OF THE SITE."), 12.F (THE YELP ENTITIES DISCLAIM LIABILITY FOR ANY (i) . . . RELIANCE, OR CONSEQUENTIAL DAMAGES"), 15.D ("The Terms contain the entire agreement between you and us regarding the use of the Site").

[2] "**14.   TERMINATION**   [¶]   A. You may terminate the Terms at any time by closing your account, discontinuing your use of the Site, and providing Yelp with a notice of termination here . . .   [¶]   B. We may close your account, suspend your ability to use certain portions of the Site, and/or ban you altogether from the Site for any or no reason, and without notice or liability of any kind.   Any such action could prevent you from accessing your account, the Site, Your Content, Site Content, or any other related information."

special events that may include food and beverage tastings from local businesses, and free promotional items with Yelp branding.  *Id.*  In order to join the Yelp Elite, a user must agree to Yelp's Elite Terms.  MacBean Decl., ¶ 8 and Exhibit D (Elite Terms), ¶ 2. The Elite Terms make clear that Yelp Elite members are not employees of Yelp, that such members are not entitled to monetary compensation from Yelp, and that such members, or Yelp, may terminate Elite membership at any time.  Elite Terms, ¶¶ 4[3], 5[4], and 7[5].

**E.    Plaintiffs.**

Plaintiffs each claim that they are entitled to compensation because Yelp has published their reviews, photos, and other content contributions online.  Complaint, ¶¶ 3-12, 35-37, 65-67, 75-80, 83-86.  Plaintiff Panzer alleges that he is domiciled in Houston, Texas, and has written approximately 70 Yelp reviews since November 2007.  *Id.*, ¶ 15. Plaintiff Sayers alleges that she is domiciled in Portland, Oregon, has written over 500 reviews for Yelp since 2006, and that she was a Yelp Elite although Yelp later closed her user account.  *Id.*, ¶ 16.  Plaintiff Jeung alleges that she is domiciled in Los Angeles, California, has written approximately 1,100 reviews, and that she was also a Yelp Elite, whose user account was closed.  *Id.*, ¶ 17.  Plaintiff Walchesky alleges that he is domiciled in Pittsburgh, Pennsylvania, has written over 1,200 reviews, as well as 238

---

[3]  "4. . . . **RELEASE OF LIABILITY** . . . [¶] You . . . hereby release, waive, discharge and covenant not to sue Yelp and its respective [entities and related individuals] from any and all claims, demands, causes of action, damages, losses or expenses . . . which may arise out of, result from, or relate in any way to your membership in the Elite Squad . . ., except, of course, for any negligence or willful misconduct on our part."

[4]  "**5.  Termination**  [¶]  While we hope not to, Yelp may prohibit your attendance at any Yelp Event and/or terminate your Elite Squad membership at any time if you fail to abide by these Elite Terms, the Terms of Service, or for any or no reason, without notice or liability of any kind.  You may terminate your Elite Squad membership and these Elite Terms at any time by sending a request to feedback@yelp.com."

[5]  "**7.  General Terms**  [¶]  You understand that you are not an employee, representative, or agent of Yelp. You agree that you will not represent yourself as an employee, representative, or agent of Yelp.  We reserve the right to modify, update, or discontinue the Elite Squad at our sole discretion, at any time, for any or no reason, and without notice or liability."

1  follow-up and updated reviews, and has taken and submitted 2,122 photographs.

2  *Id.*, ¶ 18.   Yelp's records generally confirm Plaintiffs' allegations regarding the dates

3  they joined Yelp, the number of reviews they wrote, and the fact that Jeung and Sayers'

4  accounts were closed.  See MacBean Decl., ¶¶ 10, 19, 23-26.

5      **F.     Plaintiffs Submitted Their Content to Yelp Without Any Reasonable**

6          **Expectation of Monetary Compensation.**

7          Each of the Plaintiffs submitted his or her content pursuant to Yelp's Terms of

8  Service, which did not provide any reasonable expectation of being monetarily

9  compensated for that content.  See MacBean Decl., ¶¶ 6-7 and Exhibits B and C thereto.

10  Ms. Sayers and Ms. Jeung were subject to additional terms as members of the Yelp Elite

11  Squad.  See MacBean Decl., ¶ 8 and Exhibit D thereto.  Based on both agreements, there

12  is no question that Plaintiffs donated their content, as they could not have had a

13  reasonable expectation of being paid for their contributions to Yelp.  Rather, Plaintiffs

14  got broad exposure of their thoughts and reviews in an international forum visited by

15  hundreds of millions of users.  The terms repeatedly agreed to by Plaintiffs – and

16  confirmed each time Plaintiffs logged in to Yelp.com – made clear that Plaintiffs would

17  not receive monetary compensation.

18      **G.     Plaintiffs Received Non-Monetary Benefits from Using Yelp.**

19          Plaintiffs have admitted to receiving benefits from using Yelp.  They state that

20  they used Yelp for social networking.  See Complaint, ¶¶ 15-18.  The Complaint alleges

21  that "Plaintiffs wrote, researched, edited, lodged reviews, upgraded prior reviews, and

22  generally promoted Defendant's website based upon Yelp's inducement of trinkets,

23  social status, liquor, food and other non-wage compensation."  Complaint, ¶ 75.  Dr.

24  Panzer has used Yelp to provide information about his business and communicate with

25  other Yelp users in order to solicit publicity for his optometry practice, in addition to

26  writing reviews about restaurants and other businesses.  See MacBean Decl.,  ¶ **13** and

27  Exhibit F thereto.  Mr. Walchesky stated that "[Yelp] has become an unexpected outlet

28  for my writing."  See MacBean Decl., ¶ 20 and Exhibit L thereto.  He also credited Yelp

for making him more "adventurous" and providing a forum to make new friends. *Id.* Ms. Jeung has compared Yelp to a diary.  See MacBean Decl., ¶ 24 and Exhibit O thereto.  Similarly, Ms. Sayers has stated, "I use Yelp to share my experience on the places I visit as well as for my benefit so I can remember the cool places I [sic] been to." See MacBean Decl., ¶ 27 and Exhibit Q thereto.  Plaintiffs have also all used Yelp's messaging service to send correspondence to other Yelp users.  See MacBean Decl., ¶¶ 13, 15, 21, 23, 25, 27.

### H.   Procedural History.

Plaintiffs filed this Complaint on October 22, 2013.  Dkt No. 1.  Yelp did not receive any demand for compensation from any plaintiff or his or her counsel before the Complaint was filed.  Goldowitz Decl., ¶ 2.  Yelp was served with the Complaint on October 25, 2013.  See Dkt. No. 8, 1:25-26.  On November 13, 2013, the parties filed a Stipulation extending time for Yelp to answer the Complaint to November 29, 2013. Dkt. No. 8.  On November 27, 2013, Yelp filed a Motion to Dismiss the first claim for violation of the Fair Labor Standards Act ("FLSA"), pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 9-1.  On December 22, 2013, the parties filed a Stipulation to extend the time for Yelp to file this special motion to strike the second and third claims, to December 31, 2013.  Dkt. No. 29.  On December 26, 2013, this Court approved the Stipulation.  Dkt. No. 21.  Conferences of counsel, pursuant to L.R. 7-3, took place on December 17 (by email) and 23 (by phone), 2013.  Goldowitz Decl., ¶¶ 3-4.

## II.   PLAINTIFFS' STATE LAW CLAIMS FOR QUANTUM MERUIT AND UNJUST ENRICHMENT ARE COVERED BY THE CALIFORNIA ANTI-SLAPP LAW.

### A.   The California Anti-SLAPP Law Was Enacted to Protect the Fundamental Constitutional Rights of Petition and Speech, and Is to Be Construed Broadly.

In 1992, in response to the "disturbing increase" in meritless lawsuits brought "to

chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," the California Legislature overwhelmingly enacted California's anti-SLAPP law, § 425.16.  1992 Cal. Stats., ch. 726, § 2.  In 1997, the Legislature unanimously amended the statute to expressly state that it "shall be construed broadly."  1997 Cal. Stats., ch. 271, § 1 (amending § 425.16(a)).  Section 425.16(a) provides in pertinent part:  "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and this participation should not be chilled through abuse of the judicial process.  *To this end, this section shall be construed broadly*."  (Emphasis added.)

In 1999, the California Supreme Court underscored this requirement of broad construction, directing that courts, "whenever possible, should interpret the First Amendment and section 425.16 in a manner 'favorable to the exercise of freedom of speech, not to its curtailment.'"  *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1119, 81 Cal. Rptr. 2d 471, 479 (1999) (citation omitted).  As that Court has noted, "'the point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights.'"  *Varian Medical Systems v. Delfino,* 35 Cal. 4th 180, 193, 25 Cal. Rptr. 3d 298, 308 (2005) (*Varian*) (emphasis in original; citation omitted).

California's anti-SLAPP statute is intended to permit a defendant to obtain an early dismissal with prejudice of meritless claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." § 425.16(b)(1); see also *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010) ("California's anti-SLAPP statute permits courts at an early stage to dismiss meritless defamation cases 'aimed at chilling expression through costly, time-consuming litigation.'") (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001)).  The statute mandates that attorneys' fees be awarded to a prevailing defendant. § 425.16(c)(1).

### 1.    Section 425.16 Sets Forth a Two-step Analysis.

Section 425.16 sets forth a two-step process for evaluating a special motion to strike.  First, the defendant must make a prima facie showing that the plaintiff's cause of action arises from an act of the defendant in furtherance of the right of petition and/or free speech.  § 425.16(b)(1); *Simpson Strong-Tie Company v. Gore*, 49 Cal. 4th 12, 21, 109 Cal. Rptr. 3d 329, 336 (2010).  If the defendant makes this showing, the burden shifts to the plaintiff to establish a probability of prevailing on his or her claim by establishing that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment."  *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821, 123 Cal. Rptr. 2d 19, 26 (2002) (*Wilson*) (citations and internal punctuation omitted).  If the plaintiff does not meet this burden, the defendant's motion *must* be granted.  *Varian*, 35 Cal. 4th at 192.

### 2.    The Scope of Acts Covered by Section 425.16.

Section 425.16 sets forth four illustrations of the types of protected acts.  Section 425.16(e)(4) covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The California anti-SLAPP law applies to many different types of claims.  "Nothing in the statute . . . excludes any particular type of action from its operation."  *Navellier v. Sletten*, 29 Cal. 4th 82, 92, 124 Cal. Rptr. 2d 530, 539 (2002); *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652, 49 Cal. Rptr. 2d 620, 634 (1996) ("Section 425.16 applies to any cause of action arising from petition activity, not only tort actions"), disapproved on another point in *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68, n.5, 124 Cal. Rptr. 2d 507, 519, n.5 (2002).

### 3.    Treatment of Mixed Causes of Action.

Consistent with the required broad construction, the anti-SLAPP law applies to claims if they are based on both activity that is protected by § 425.16 and activity that is not.  "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading

tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" *Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294, 308, 106 Cal. Rptr. 2d 906 (2001).  Thus, "where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is 'merely incidental' to the unprotected conduct." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672, 35 Cal. Rptr. 3d 31 (2005) (citations and punctuation omitted).  "A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." *Salma v. Capon*, 161 Cal. App. 4th 1275, 1287, 74 Cal. Rptr. 3d 873 (2008); see also *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures,* 184 Cal. App. 4th 1539, 1552-1553, 110 Cal. Rptr. 3d 129 (2010) (holding that two causes of action were subject to § 425.16 where protected activity was contained in only two out of 16 allegations of breaches of fiduciary duty, explaining that they were not "merely incidental" because "they are still acts for which [plaintiff] asserts liability and seeks damages" and those allegations "provide an independent basis for liability").

### 4.    Section 425.16 Applies to State Claims in Federal Court.

It is well established that state claims in federal court are subject to California's anti-SLAPP law.  See, e.g., *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-973 (9th Cir. 1999) (*Newsham*); *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (reversing district court for failing to apply anti-SLAPP statute); *Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008), *aff'd*, 620 F.3d 992, 1000 (9th Cir. 2010); see also *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261-263 (9th Cir. 2013) (reversing the district court's order denying a § 425.16 motion, citing Ninth Circuit precedent that such motions are available in federal court, and finding that the district court was correct that Makaeff met her initial burden of showing that Trump University's defamation claim arose from an act in furtherance of her free speech rights); and *id*. at 272-276 (joint concurrences by Chief

1   Judge Kozinski and Judge Paez, asserting that *Newsham* is wrong and should be

2   reconsidered), *reh'g en banc denied*, 736 F.3d 1180 (9th Cir. 2013) (rejecting pleas to

3   repudiate *Newsham*).  The two claims challenged by this motion are based on California

4   substantive law.  See Complaint, ¶¶ 74-86 (alleging claims for quantum meruit and

5   unjust enrichment).

6        **B.      Plaintiffs' State Claims Arise From Yelp's Publication and Operation**

7                  **of Its Consumer Information Website, Conduct That Is Protected by §**

8                  **425.16(e)(4), Because It Is in Furtherance of the Right of Free Speech in**

9                  **Connection with Issues of Public Interest.**

10       Plaintiffs' claims are subject to § 425.16(e)(4) because they arise from Yelp's

11   "conduct in furtherance of the exercise of the . . . constitutional right of free speech in

12   connection with a public issue or an issue of public interest." § 425.16(e)(4).

13       The requirement that the activity be "'in connection with an issue of public

14   interest' . . . is to be 'construed broadly' so as to encourage participation by all segments

15   of our society in vigorous public debate related to issues of public interest." *Seelig v.*

16   *Infinity Broadcasting Corp.,* 97 Cal. App. 4th 798, 808, 119 Cal. Rptr. 2d 108 (2002)

17   (*Seelig*).  The Ninth Circuit has affirmed that courts "must construe . . . 'issue of public'

18   in section 425.16(e)(4) broadly" to include any "topic of widespread, public interest."

19   *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010).

20       The public interest requirement has, pursuant to this policy, been construed

21   broadly.  See *Nygård v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d

22   210 (2008), the court held that under the required broad construction of the anti-SLAPP

23   law, "'an issue of public interest' . . . is *any issue in which the public is interested*"

24   (emphasis in original); see also *Seelig*, 97 Cal. App. 4th at 807-808 (a radio "shock-

25   jock's" commentary about plaintiff's decision to appear on the television show "Who

26   Wants to Marry A Multimillionaire" involved an issue of public interest); *Ingels v.*

27   *Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1064, 28 Cal. Rptr.

28   3d 933, 941 (2005) (interchange on radio call-in talk show regarding whether caller was

too old to participate in the show involved a matter of public interest); *Dowling v.*
*Zimmerman*, 85 Cal. App. 4th 1400, 1420, 103 Cal. Rptr. 2d 174, 190 (2001) (statement
that someone had entered the tenants' locked garage and turned the dial of their water
heater off was protected under (e)(4), even though it directly only affected two tenants).

### 1.   Consumer Information Published on Yelp's Website Is an Issue of Public Interest.

Consumer feedback such as Yelp's users' comments about businesses is exactly
the kind of speech that the anti-SLAPP statute is intended to protect and is considered an
issue of "public interest" under the statute.  Plaintiffs effectively admit this, stating that
"Every day, millions of people use online reviews to help them make purchasing
decisions . . .  Online reviews are a popular and valuable resource for consumers to learn
about local businesses and professionals" and that "Yelp owns and operates popular
websites that feature information about local businesses nationwide and around the
world."  Complaint, ¶¶ 1-2.  Indeed, as Plaintiffs point out:  "One of Defendant's co-
founders stated:  'The site wasn't set up to serve businesses, it was meant to serve the
consumer.  Without the community of reviewers, there is no Yelp.'"  Complaint, ¶ 6.
The consumer information published by Yelp – including the content Plaintiffs
contributed to Yelp – is an issue of public interest.

As the court noted in *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 899, 17 Cal. Rptr.
3d 497 (2004) (*Wilbanks*) [punctuation and citation omitted], "[c]ourts have recognized
the importance of the public's access to consumer information," since "[m]embers of the
public . . . . clearly have an interest in matters which affect their roles as consumers, and
peaceful activities . . . which inform them about such matters are protected by the First
Amendment."  In *Wilbanks*, a viatical settlements brokerage and its president sued the
defendant for critical statements on her website.  *Id.* at 889-890.  Even though Plaintiffs'
"business practices do not affect a large number of people" (*id.* at 898), the statements
were nonetheless covered by § 425.16(e)(4), because they were "consumer protection
information:"

1   The statements made by Wolk were not simply a report of one broker's

2   business practices, of interest only to that broker and to those who had been

3   affected by those practices.  Wolk's statements were a warning not to use

4   plaintiff's services.  In the context of information ostensibly provided to aid

5   consumers choosing among brokers, the statements, therefore, were directly

6   connected to an issue of public concern.

7   *Id.* at 900.

8       Similarly, in *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146, 147 Cal. Rptr. 3d

9   496 (2012), statements posted to the Ripoff Report website about the plaintiff's character

10  and business practices were intended to serve as a warning to consumers about his

11  trustworthiness were found to be of public interest.  In *Carver v. Bonds,* 135 Cal. App.

12  4th 328, 343-344, 37 Cal. Rptr. 3d 480 (2005), a newspaper article about a medical

13  practitioner involved issue of public interest as consumer protection information, where

14  information would assist others in choosing doctors.  Finally, by submitting their content

15  to Yelp for publication online, Plaintiffs themselves appear to agree their submissions

16  were in connection with an issue of public interest.  See *Summit Bank v. Rogers*, 206 Cal.

17  App. 4th 669, 694, 142 Cal. Rptr. 3d 40, 58 (2012).

18      **2.      Yelp's Publication of Consumer Information and Operation of Its**

19              **Website Is Conduct in Furtherance of the Right of Free Speech.**

20      The protections provided by California's anti-SLAPP law are at the core of Yelp's

21  conduct in this case.  The Plaintiffs allege that they used Yelp to publish content that

22  they created themselves – such as consumer reviews and photos – to a broader audience.

23  Complaint, ¶¶ 15-18, 22; see also ¶ 75.  Plaintiffs further allege that "[t]he work they

24  performed -- writing, researching, editing, lodging reviews, upgrading prior reviews, and

25  generally promoting the site -- is central to Defendant's business model as a publisher."

26  *Id*., ¶ 11; see also ¶ 12 [similar allegation as to the class].  Plaintiffs also allege that Yelp

27  has profited from publication of their content and they should therefore be compensated.

28  Complaint, ¶¶ 5, 10, 12, 25, 35, 74-75, 77, 80, 82-83.

1    To determine whether a defendant has met its initial burden, a court must focus on

2    the "defendant's activity that gives rise to [its] asserted liability." *Navellier*, 29 Cal. 4th

3    at 92.  "By its terms, [§ 425.16] includes not merely actual exercises of free speech rights

4    but also conduct that furthers such rights." *Hilton,* 599 F.3d at 903 (citing §

5    425.16(e)(4)); see also *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166,

6    1 Cal. Rptr. 3d 536 (2003) ("*Lieberman*") ("conduct" within the meaning of the anti-

7    SLAPP statute "is not limited to the exercise of [the] right of free speech, but to all

8    conduct in furtherance of the exercise of free speech in connection with a public issue").

9    "An act is in furtherance of the right of free speech if the act helps to advance that right

10   or assists in the exercise of that right." *Tamkin v. CBS Broadcasting, Inc*., 193 Cal. App.

11   4th 133, 143, 122 Cal. Rptr. 3d 264 (2011).  For example, pre-publication or

12   pre-production acts such as investigating, newsgathering, and conducting interviews

13   constitute conduct that furthers the right of free speech.  *Taus v. Loftus*, 40 Cal. 4th 683,

14   713, 727-29, 54 Cal. Rptr. 3d 775 (2007) ("*Taus*"); *Lieberman*, 110 Cal. App. 4th at

15   164-166.  The conduct at issue here involves Yelp's conduct in furtherance of free

16   speech rights on the Internet.

17   Distribution of information is included in the right of free speech. *Van Nuys*

18   *Publishing Co. v. City of Thousand Oaks,* 5 Cal. 3d 817, 821, 97 Cal. Rptr. 777 (1971);

19   *Griswold v. Connecticut*, 381 U.S. 479, 482, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965)

20   ("The right of freedom of speech and press includes not only the right to utter or to print,

21   but the right to distribute, the right to receive, the right to read . . ."); *Weaver v. Jordan*,

22   64 Cal. 2d 235, 241-242, 49 Cal. Rptr. 537 (1966) ("*Weaver*").  In an opinion issued just

23   last month, the court held that a newspaper's publication and maintenance of its online

24   forum arose from its acts in furtherance of its free speech rights and was thus protected

25   under the anti-SLAPP law.  *Hupp v. Freedom Communications, Inc.*, 221 Cal. App. 4th

26   398, 405, 163 Cal. Rptr. 3d 919 (2013) ("Maintaining a forum for discussion of issues of

27   public interest is a quintessential way to facilitate rights, and the Register has no liability

28   for doing so.").

Further, the First Amendment protects not only the right to distribute information, but also the right to receive information.  See, e.g., *Weaver*, 64 Cal. 2d at 241-242; *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*, 425 U.S. 748, 756-57, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) ("[t]he protection afforded is to the communication, to its source and to its recipients both. . . . [F]reedom of speech 'necessarily protects the right to receive.'"); *Martin v. Struthers*, 319 U.S. 141, 143, 63 S. Ct. 862, 87 L. Ed. 1313 (1943) (same).

Yelp's existence is premised on providing a public forum for individuals – including the Plaintiffs here – to exercise their First Amendment rights by speaking out on issues of public interest.  Therefore, it follows that publishing consumer information, and other information regarding issues of public interest, is conduct in furtherance of the right of free speech.  Because Yelp's conduct is also in connection with issues of public interest, it is protected under § 425.16(e)(4).

## III.   PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON THEIR QUANTUM MERUIT OR UNJUST ENRICHMENT CLAIMS.

Since Yelp has shown that Plaintiffs' state law claims arise from Yelp's conduct that is protected under § 425.16(e)(4), the burden shifts to Plaintiffs to establish a probability of prevailing on their claims, by establishing that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment."  *Wilson*, 28 Cal. 4th at 821.  Plaintiffs must meet this burden with admissible evidence.  *Taus,* 40 Cal. 4th at 729.  Plaintiffs will not be able to meet their burden, because these claims have no merit.

### A.   Plaintiffs' Quantum Meruit Claim Has No Merit Because They Had No Reasonable Expectation of Monetary Compensation.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.'  To recover in quantum meruit, a party need not prove the

existence of a contract, but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'"  *Huskinson & Brown v. Wolf,* 32 Cal. 4th 453, 458, 9 Cal. Rptr. 3d 693 (2004).  A common count for quantum meruit will generally lie when services have been rendered under a contract that is unenforceable, either because it is not in writing or for other reasons.  See *Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990, 996, 90 Cal. Rptr. 2d 665 (1999) ("*Iverson*").  A party claiming quantum meruit recovery must *not* have donated his or her services gratuitously.  *In re De Laurentiis Entertainment Group Inc.*, 963 F.2d 1269, 1273 (9th Cir. 1992) (citing *Wescoatt v. Meeker*, 63 Cal. App. 2d 618, 626, 147 P.2d 41 (1944)).  Finally, the statute of limitations for quantum meruit claims is two years.  *Iverson*, 76 Cal. App. 4th at 996.  This would preclude any of Plaintiffs' claims that arose prior to October 22, 2011.

Here, Plaintiffs voluntarily used Yelp's free online services without any expectation that they would be paid for doing so.  Indeed, Plaintiffs do not plead any expectation of compensation from Yelp.  Further, Plaintiffs cannot show that they, or other users, had any such reasonable expectation.  One reason for this is that the TOS, to which Plaintiffs repeatedly agreed to, disavow any obligation for Yelp to pay for Plaintiffs' content, and make no mention of any rights to compensation.  Indeed, the TOS make clear that Plaintiffs granted Yelp royalty-free rights to display and use the very content that forms the basis for their claims for compensation. TOS, ¶ 5.B ("We may use Your Content in a number of different ways . . . As such, you hereby irrevocably grant us world-wide, perpetual, non-exclusive, royalty-free, assignable, sublicensable, transferable rights to use Your Content for any purpose.").  Moreover, as they describe in their own words, Plaintiffs received great benefits from using Yelp's free services – such as wide, public distribution for their writing, consumer information about local businesses, and opportunities to make friends through Yelp.com.

The principles of equity and good conscience do not justify Plaintiffs' claim for

1  quantum meruit when Plaintiffs never expected to be paid, Yelp never agreed to pay

2  Plaintiffs (explicitly or implicitly), and Plaintiffs received great benefit from the use of

3  Yelp's free services.

4      **B.   Plaintiffs' Unjust Enrichment Claim Has No Merit Because There Is No**

5          **Such Cause of Action in California.**

6      As a matter of law, Plaintiffs' unjust enrichment claim has no merit, because

7  "there is no cause of action in California for unjust enrichment." *Durell v. Sharp*

8  *Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682 (2010) ("*Durell*")

9  (quoting *Melchior v. New Line Productions., Inc*., 106 Cal. App. 4th 779, 793, 131 Cal.

10  Rptr. 2d 347 (2003)); *Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1138,

11  117 Cal. Rptr. 3d 262 (2010) (quoting *Durell*); *McBride v. Boughton*, 123 Cal. App. 4th

12  379, 389, 20 Cal. Rptr. 3d 115 (2004) ("Unjust enrichment is not a cause of action,

13  however, or even a remedy, but rather a general principle, underlying various legal

14  doctrines and remedies"; citations and internal punctuation omitted).

15      The federal courts in New York dismissed a case in which plaintiffs made claims

16  remarkably similar to those presented here, arguing that The Huffington Post was

17  unjustly enriched through its publication of user-generated content. *Tasini v. AOL*, 851

18  F. Supp. 2d 734, 739 (S.D.N.Y. 2012) (*Tasini*), *aff'd* 505 Fed. Appx. 45, 47-48, 2012

19  U.S. App. LEXIS 25323, *47-48 (2d. Cir. 2012) (finding that "plaintiffs have failed to

20  allege facts sufficient to state a claim for unjust enrichment" based on a New York

21  statute and affirming "the District Court's careful opinion and order").[6]  As here, the

22

23      [6]  Plaintiffs appear to be familiar with this case, as they liken this action to it in
their Complaint.  For example, Plaintiffs argue in Paragraph 7 of their Complaint that

24  "[b]usiness journal commentators have compared said business practices to a 21st
Century galley slave ship with pirates banging the drum to keep up the fast pace and to

25  fill the pockets of their stockholders with treasure. . . and with "overhead that would
shame an antebellum plantation."  Although not cited, this appears to be a reference to an

26  article regarding the *Tasini* case, originally published in the Los Angeles Times.  See
Tim Rutten, *AOL ? HuffPo. The loser? Journalism*, L.A. Times, Feb. 9, 2011,

27  http://articles.latimes.com/2011/feb/09/opinion/la-oe-rutten-column-huffington-aol-
20110209 ("The other partner to this dubious arrangement is the Huffington Post, which

28  *is* a new-media marvel of ingenuity, combining a mastery of editing geared to game the

1   plaintiffs therein were not promised anything but the exposure publication of their

2   content online would provide.  *Tasini,* at 737-738.  In dismissing the claims, the court

3   stated:

4           Here, the plaintiffs claim that the defendants have been unjustly

5       enriched by generating profit from the submissions of the plaintiffs to The

6       Huffington Post and not paying the plaintiffs for those submissions, while

7       enticing the plaintiffs with misleading promises of exposure.  However, the

8       plaintiffs entered into their transactions with the defendants with full

9       knowledge of the facts and no expectation of compensation other than

10      exposure.  In such circumstances, equity and good conscience counsel

11      against retroactively altering the parties' clear agreements.  [¶]  There is no

12      question that the plaintiffs submitted their materials to The Huffington Post

13      with no expectation of monetary compensation and that they got what they

14      paid for -- exposure in The Huffington Post. . . . [¶] . . . The principles of

15      equity and good conscience do not justify giving the plaintiffs a piece of the

16      purchase price when they never expected to be paid, repeatedly agreed to

17      the same bargain, and went into the arrangement with eyes wide open. . . .

18      Quite simply, the plaintiffs offered a service and the defendants offered

19      exposure in return, and the transaction occurred exactly as advertised. The

20      defendants followed through on their end of the agreed-upon bargain.

21  *Id*. at 740-741.  Here, Plaintiffs' claims are even weaker than those of the writers in the

22  *Tasini* case, as Plaintiffs used Yelp's free services to derive many benefits for themselves

23  beyond mere publication of their writing.  The result here should be the same as in *Tasini*

24  – this Court should also find that Plaintiffs' claims for unjust enrichment are without

25  merit.

26  _____

27  search engines that stimulate Web traffic and overhead that would shame an antebellum
    plantation . . . To grasp its business model, though, you need to picture a galley rowed by
28  slaves and commanded by pirates.").

1   **C.   Plaintiffs' Class Action Allegations Have No Merit Because Plaintiffs**
2         **Cannot Show Ascertainability or Commonality.**

3   As set forth in more detail in Yelp's Motion to Dismiss the FLSA claim, courts

4   have held that a class must be adequately defined and clearly ascertainable before a class

5   action may proceed, and a class definition should be "precise, objective and presently

6   ascertainable." Dkt. No. 9-1, 20:25-21:6.  As also set forth in more detail in that Motion

7   to Dismiss, Plaintiffs have failed to meet the burden of defining an ascertainable class in

8   their Complaint, because each Plaintiff's claims depend on their individual

9   circumstances and unique interactions with Yelp, and the named Plaintiffs' claims to be

10  "employees" are implausible legal conclusions. *Id.*, 21:7-22:13.  In addition, Federal

11  Rule of Civil Procedure 23(a) requires parties seeking class certification to demonstrate

12  commonality in that the class members must "have suffered the same injury."  See

13  *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374,

14  389, 2011 U.S. Lexis 4567 (2011).  Plaintiffs cannot show that their claims are common

15  to all Yelp users who submitted content, since they would depend in part upon the

16  individual expectation of each individual plaintiff.  Even if Plaintiffs could show they

17  did not submit their content gratuitously, they cannot show such state of mind as to all

18  potential class members.

19

20  **IV.   THIS MOTION SHOULD BE GRANTED AND YELP SHOULD BE**
21        **AWARDED ITS ATTORNEYS' FEES AND COSTS.**

22  As set forth above, Yelp has shown that Plaintiffs' second and third claims arise,

23  in at least significant part, from activity protected by § 425.16(e)(4), and Plaintiffs can

24  not establish a probability of prevailing on those claims.  Therefore Yelp's special

25  motion to strike should be granted.  § 425.16(b)(1).

26  In addition, Yelp is entitled to recover its attorneys' fees and costs in connection

27  with this motion, as the prevailing defendant under § 425.16, which provides that "[i]n

28  any action subject to subdivision (b), a prevailing defendant on a special motion to strike

*shall* be entitled to recover his or her attorney's fees and costs." § 425.16(c) (emphasis added); see also *Newsham*, 190 F.3d at 971-973 (fee provision of California anti-SLAPP law is applicable in federal court); *Thomas v. L. A. Times Communications LLC*, 189 F. Supp. 2d 1005, 1017 (C.D. Cal. 2002) ("an award of attorneys' fees to a moving party is mandatory if a special motion to strike is granted").

      The fee-shifting provision is intended to discourage SLAPPs and encourage representation in suits for parties who might otherwise be unable to defend themselves. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131, 104 Cal. Rptr. 2d 377, 383 (2001); see also *Metabolife Int'l., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002) ("'The right of prevailing defendants to recover their reasonable attorney fees under section 425.16 adequately compensates them for the expense of responding to a baseless lawsuit.'") (quoting *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362, 42 Cal. Rptr. 2d 464, 472 (1995)).  Therefore, Yelp requests that this Court find that it is entitled to an award of attorneys' fees and costs in an amount to be proven.

**CONCLUSION.**

      This lawsuit is a frivolous attempt to prevent Yelp from exercising its First Amendment rights and prevent its users to exercise theirs.  Plaintiffs seek to unjustly and retroactively change the terms under which Yelp has operated since its launch, and to which Plaintiffs repeatedly and knowingly agreed.  These claims should be dismissed as the meritless SLAPP that they are, and Yelp should be awarded its attorneys' fees and costs.

DATED: December 31, 2013        CALIFORNIA ANTI-SLAPP PROJECT

                                 By: /s/ Mark Goldowitz
                                    Mark Goldowitz

                                Attorneys for Defendant YELP INC.